UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
EASTMAN CHEMICAL COMPANY                                   :
                                                           :
                              Plaintiff,                   :
                                                           :
              -against-                                    :        11 Civ. 2589 (JPO) (HBP)
                                                           :
NESTLÉ WATERS MANAGEMENT &                                 :              MEMORANDUM
TECHNOLOGY                                                 :              AND ORDER
                                                           :
                              Defendant.                   :
----------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

        Eastman Chemical Company ("Eastman") brings this action asserting three counts of

breach of contract against defendant Nestlé Waters Management & Technology ("Nestlé").

Nestlé and Eastman entered into two contracts ("the Contracts") for the supply of resin by

Eastman to Nestlé.

        On August 16, 2012, Magistrate Judge Henry Pitman issued a Report and

Recommendation regarding Nestlé's motion, pursuant to Federal Rule of Civil Procedure

12(b)(6), to dismiss portions of Eastman's Amended Complaint.  (Dk. No. 44 ("the Report").)

Judge Pitman recommended that this Court partially deny and partially grant Nestlé's motion to

dismiss.  More specifically, the Report recommends denying Nestlé's motion to dismiss

Eastman's first and second claims, while granting the motion to dismiss the third claim.  On

September 24, 2012, Nestlé objected to the Report's recommendations as to Eastman's first two

causes of action.  (Dk. No. 48 ("Def Obj.").)  Nestlé does not object to the Report's

recommendations as to the third claim.  Eastman has not filed an objection to the Report.

        For the reasons explained below, the Court adopts the Report's conclusions in full.

## I.      Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1), a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  The district court reviews a magistrate judge's report "strictly for clear error when no objection has been made," as well as "[w]hen a party makes only conclusory or general objections, or simply reiterates the original arguments."  *Coach, Inc v. O'Brien*, No. 10 Civ. 6071 (JPO) (JLC), 2012 WL 1255276, at *1 (S.D.N.Y. Apr. 13, 2012) (*citing Crowell v. Astrue,* No. 08 Civ. 8019 (LTS) (DF), 2011 WL 4863537, at *2 (S.D.N.Y. Oct. 12, 2011)).  In contrast, the district court reviews *de novo* the conclusions in the magistrate judge's report about which substantive objections have been made.  *See McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009).

The Report at issue concerns a motion to dismiss under Rule 12(b)(6).  In "considering a motion to dismiss," the Court "should assume [the] veracity" of all of the plaintiff's "well-pleaded factual allegations."  *Aschcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In other words, in evaluating the strength of Nestlé's objections, the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor."  *Allaire Corp. v. Okumus,* 433 F.3d 248, 249–50 (2d Cir. 2006) (internal quotations omitted).

## II.     Discussion

Judge Pitman's Report provides an exhaustive discussion of the factual and procedural background of this case, familiarity with which is assumed.  Eastman claims that (1) in twelve separate months, Nestlé supplied Eastman with fabricated "competitive prices" in order to obligate Eastman to supply resins at a lower price, (2) in ten separate months, Nestlé bullied Eastman into lowering the price of resins by threatening to invoke spurious competitive price

offers, and (3) Nestlé failed to order that amount of a particular resin, PS 2800, required by the second contract.  (Amended Complaint ("Amend. Compl.") ¶¶ 28-41.)

### A.    Plaintiff's Third Claim

Neither party objects to Judge Pitman's recommendation that Plaintiff's third claim be dismissed to the extent that it seeks damages arising from Nestlé's failure to place orders for PS 2800 in January 2011.  Therefore, Judge Pitman's recommendation as to the third claim is reviewed only for clear error.  *See, e.g., Frankel v. City of New York*, No. 07 Civ. 3436 (LTS) (DFE), 2009 WL 465645, at *2 (S.D.N.Y. Feb 25, 2009).  Having reviewed the Report's thorough analysis of Eastman's third claim, this Court concludes that the Report's recommendation as to the third claim is not clearly erroneous.  Judge Pitman's recommendation as to the third claim is therefore adopted in its entirety.

### B.    Plaintiff's First and Second Claims

In contrast, Nestlé has lodged four objections to Judge Pitman's recommendations that Defendant's motion to dismiss the first two claims be denied.  Because Nestlé's "objections largely rehash arguments previously submitted," this Court would be on firm ground if it reviewed Judge Pitman's report solely for clear error.  *Frankel*, 2009 WL 465645, at *2; *see also Vega v. Artuz*, No. 97 Civ. 3775 (LTS) (JCF), 2002 WL 31174466, at *1 (Sept. 30, 2002) (explaining that a "rehashing of the same arguments set forth in the original petition will not suffice to invoke *de novo* review of the magistrate's recommendations.").  Given the extensiveness and clarity of Judge Pitman's Report, this would allow for brisk disposal of Nestlé's objection.  Following Judge Swain's example in *Frankel*, however, this Court, out of "an abundance of caution . . . will treat" Plaintiff's objections as "invit[ing] *de novo* review of the Report."  *Frankel*, 2009 WL 465645, at *2.

Defendant Nestlé's four objections are therefore considered *de novo* below.

### 1.       Nestlé's First Objection

In its first objection, Nestlé argues that Judge Pitman erred in recommending denial of its motion to dismiss Plaintiff's first two claims because Eastman waived its right to litigate the contract price in all of the months for which Eastman did not invoke the audit provision in the contract.

Waiver occurs when a plaintiff with "actual knowledge" of a breach "continues to perform under and accepts the benefits of a contract."  *Sauer v. Xerox*, 5 Fed.Appx. 52, 56 (2d. Cir. 2001) (quoting *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 675 (S.D.N.Y. 2001)); *see also Medinol Ltd. v. Boston Scientific Corp.*, 346 F.Supp.2d 575, 620 (S.D.N.Y. 2004) (explaining that, under "[t]he New York doctrine of election of remedies . . . upon learning of a breach, a party must choose between terminating the contract and continuing performance.").  Questions of whether the right to sue has been waived are particularly fact intensive because "the defense of waiver requires a clear manifestation of an intent by plaintiff to relinquish her known right . . . ." *Beth Israel Med. Ctr v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 585 (2d. Cir. 2009) (citation and quotation marks omitted). Plaintiff's waiver must be not only "intentional," *id.*, but also "clear, unmistakable, and without ambiguity."  *Faiveley Transport USA, Inc. v. Wabtec Corp.*, 758 F.Supp.2d 211 (S.D.N.Y. 2010) (citation omitted).  Because "[i]n general, waiver defenses involve questions of fact," the issue of whether a given contract right has been waived is typically "inappropriate for resolution on a motion to dismiss."  *Schonberger v. Serchuck*, 742 F. Supp. 108, 114 (S.D.N.Y. 1990); *see also Great Am. Ins. Co. v. M/V Handy Lake*r, No. 96 Civ. 8737 (BSJ), 2002 WL 32191640, at *7 (S.D.N.Y. Dec. 20, 2002), *aff'd*, 348 F.3d 352 (2nd Cir. 2003) ("courts generally hold that

4

whether waiver has been established by the conduct of the parties during the performance of the contract is a question of fact.").

Thus, New York law contains a "general rule . . . that questions of waiver are not decided on a motion to dismiss." *CreditSights, Inc. v. Ciasullo*, 05 CV 9345 (DAB), 2007 WL 943352, at *9 (S.D.N.Y. March 29, 2007). The only exception to this rule is where "waiver is clear on the face of the complaint," in which case the plaintiff's waiver can be determined as a matter of law. *Schonberger*, 742 F. Supp. at 114-15.

Here, Eastman's waiver of its right to bring suit is far from "clear on the face of the complaint." This case is emblematic of the rule rather than the exception: waiver here is clearly a question of fact. Construing the facts in the light most favorable to the plaintiff, the Court cannot conclude that Eastman waived its right to sue Nestlé for breach of contract. Eastman allegedly did not have actual knowledge or belief that Nestlé was supplying inaccurate competitive prices until the end of 2009. (Dk. No. 26 ("Pl. Op.") at 5.) When Eastman began to suspect Nestlé of manipulating competitive prices, Eastman used the Contracts' audit procedure to investigate its suspicions.

Eastman's plausible claim that it had no knowledge of Nestlé's manipulation of the competitive prices for the majority of the Contracts' terms is dispositive for purposes of the instant motion. Simply put, a plaintiff cannot "waive its claim for breaches it learned about subsequently." *Bear Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, No. 03 Civ. 8259 (CSH), 2007 WL 1988150, at *10 n.11 (July 10, 2007). Nestlé argues that Eastman waived its right to sue because it had actual knowledge of the Contracts' *audit provisions*, that is, of Eastman's right to either accept Nestlé's competitive price or seek an audit. (Dk. No. 48 ("Def.'s Obj.") at 10.) However, Nestlé points to no case law contradicting the basic notion that a

plaintiff cannot be found to have waived her right to sue on a contract unless she had knowledge of defendant's breach.  Indeed, the cases cited by Nestlé, despite Nestlé's assertions to the contrary, support this proposition.[1]

Therefore, Nestlé's first objection to Judge Pitman's Report lacks merit and is overruled.

### 2.      Nestlé's Second Objection

Relatedly, Nestlé argues in its second objection that invoking the audit provision was a condition precedent to filing suit.

Under New York law, "ADR [alternative dispute resolution] mechanisms reflecting the informed negotiation and endorsement of parties are valid and enforceable."  *Ferguson Electric Company Inc. v. Kendal At Ithaca Inc.*, 711 N.Y.S.2d 246, 249 (2000).  However, in order for a "[c]ontractual provisio[n] requiring parties to participate in ADR as a condition precedent to commencement of any action" to "not violate public policy . . . [t]he provision in question [must] evince[] the requisite 'clear, explicit and unequivocal' intent of the parties to participate in ADR."  *O'Brian & Gere Ltd. v. Nextgen Chemical Processes, Inc.*, 55 A.D.3d 1408, 1408, 1408-09, 864 N.Y.S.2d 617 (2008) (*citing General Ry. Signal Corp. v. Comstock & Co.*, 254 A.D.2d 759, 759, 678 N.Y.S.2d 208).  In contrast, if there is an "absence of a clear and express intent, a party may not be compelled to submit its claim to alternative dispute resolution."  *Id; see also Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085 (2d Cir. 1992) (explaining generally that "in the absence of unambiguous language, a condition will not be read into the agreement").

In the instant case, the Contracts both give Plaintiff the right to request, within four

---

[1] For instance, Nestlé relies heavily on Judge Swain's opinion in *CDO Plus Master Fund Ltd. V. Wachovia Bank, N.A.*, No. 07 Civ. 11078, 2009 WL 2033048 (S.D.N.Y. June 13, 2009), wherein the Court holds that the plaintiff waived its right to sue.  (Def. Op. at 12-13).  Judge Swain clearly premises her finding, however, on the fact that the plaintiff paid the defendant the amount requested and continued to adhere to the contract with the defendant despite "believ[ing plaintiff] was not obligated to pay."  *Id.* at *2.  Nestle also cites extensively in its first objection from *Epic Sys. Corp. v. Allcare Health Mgmt. Sys. Inc.*, No. 02 Civ. 161, 2002 WL 31051023 (N.D. Tex. Sept. 11, 2002). (Def. Op. at 13).  However, the *Epic Systems* opinion acknowledges that, where a plaintiff is unable to acquire knowledge of a defendant's breach as a result of the defendant's misconduct, no waiver has occurred.  *Id.* at *7 n.6.

months of Defendant's naming a competitive price, an audit "in order to confirm" Defendant's asserted competitive price.  (Dk. No. 24, Ex. B ("Contract One") at § 5.3(d); Dk. No. 24, Ex. C ("Contract Two") at § 6.2(d).)  According to Defendant, this indicates that "the Contracts manifested an intent that pricing issues would not linger but were required to be resolved no later than four months after each monthly pricing negotiation."  (Def. Obj. at 2.)  To wit, Defendant argues that the Contracts contain an implicit condition precedent, which precludes litigation without first requesting an audit within four months of Defendant's assertion of a competitive price.

Nestlé's close reading of the "the Contracts' carefully sequenced provisions" is simply not enough to foreclose discovery for Eastman.  (Def.'s Obj. at 3.)  No language in the Contracts clearly and conclusively disallows breach of contract claims after forgoing an audit.  Quite the contrary, the Contracts state that Eastman "*may . . .* perform a confirmatory audit" if it wishes to do so, while saying nothing at all about the necessity of Eastman's doing so before seeking a remedy for breach of contract in state or federal court.  (Contract One at § 5.3(d); Contract Two at § 6.2(d) (emphasis added).)

Nor do the Contracts use a term anything like "alternative dispute resolution."[2]  This Court knows of no legal precedent for the proposition that "audit" and "alternative dispute resolution" are synonymous under New York law.

Thus, while Defendant's brief interprets the Contracts as "requir[ing] [Eastman] to ask for an audit or forever hold its peace," Defendant does not cite any provisions in the Contracts

---

[2] This is an obvious but important distinction between this case and those cited by Nestlé in support of its argument that the Contracts in the instant case provided for binding ADR. *See, e.g.*, *CDO Plus Master Fund Ltd.*, 2009 WL 2033048, at *2 (discussing the "Contract's dispute resolution provision.").  Given the necessity that conditions precedent be clear, the distinction in terminology is an important one.  "Alternative dispute resolution" means, by definition, "A procedure for settling a dispute *by means other than litigation* . . . ." *Black's Law Dictionary* (9th ed. 2009).

mandating that Plaintiff "forever hold its peace" if it elects not to seek an audit.  (Def. Obj. at

10.)  Nestlé's assertion that the Contracts' audit provision is an "expressly" laid-out alternative

dispute resolution mechanism that unambiguously blocks the courthouse door is simply not

tenable.  (*Id*. at 13.)  As Nestlé notes in its brief, this case concerns "sophisticated parties." (*Id*. at

20.)  Had the parties intended to make the audit provision a mandatory alternative to litigation,

their intent would be unambiguous and clear on the face of the Contracts.

Nestlé's second objection is therefore overruled.

### 3.    Nestlé's Third Objection

Nestlé next contends that Judge Pitman erroneously recommended the denial of

Defendant's motion to dismiss as to Plaintiff's first two claims, because Eastman's "key

allegations"—that Nestlé used bogus competitive prices to lower the resin price Nestlé paid

Eastman—is competitively speculative.  (Def. Obj. at 15-16.)

Federal Rule 8(a)(2) requires that a complaint provide "a short and plain statement of the

claim showing that the pleader is entitled to relief."  As Defendant rightly notes, a plaintiff

cannot satisfy this burden by proffering "'naked assertion[s]' devoid of 'further factual

enhancements'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

557 (2007)).  However, this does not mean that a claim must contain "detailed factual

allegations" to survive a Rule 12(b)(6) motion to dismiss.  *Talley v. Brentwood Union Free Sch.

Dist.*, 08 Civ. 790, 2009 WL 1797627, at *4 (E.D.N.Y. June 24, 2009).  Rather, a plaintiff need

allege "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550

U.S. at 570.  "A claim has facial plausibility when the pleaded factual content allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 678; *see also Anderson News LLP v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012)

(explaining that a complaint is plausible if it "allege[s] facts that would be sufficient to permit a reasonable inference that the defendant has engaged in culpable conduct").

Simply put, the Court disagrees with Nestlé's assertion that Eastman's complaint is no more than "rank speculation."  (Def.'s Obj. at 15.)  Plaintiff's action is founded upon, *inter alia*, Defendant's alleged invocation of the same competitive price for three straight months despite volatility in the market, as well as Defendant's improbable claim that other companies were offering to sell resin at or below index price.  (Amend. Compl. ¶¶ 18-19.) Eastman also relies on the determinations of the independent auditor, who found that Nestlé had quoted a competitive price that "did *not* meet the contractual requirements"—which is to say, it was a lowball figure in the guise of a contractually defined competitive price.  (Amend. Compl. ¶ 27.)  Construing the facts in the light most favorable to Eastman, the Court concludes that Plaintiff has alleged sufficient facts to surpass the relatively low bar set by Rule 12(b)(6).  Eastman has alleged sufficient facts to "unlock the doors of discovery."  *Iqbal*, 556 U.S. at 678.[3]

Nestlé stresses that some of Eastman's allegations are made "upon information and belief," but this Court finds the use of this phrase less provocative than does Defendant.  The Second Circuit has underscored that "pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible" is perfectly sufficient to satisfy Rule 8(a)(2) and survive a Rule 12(b)(6) motion.  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

---

[3] Defendant seems to urge this Court to apply a more stringent pleading standard in cases involving business contracts.  Defendant cites no authority for such a general proposition, and the Court is aware of none.

### 4.  Nestlé's Fourth Objection

Nestlé's fourth objection pertains solely to Eastman's second cause of action.  In short, Nestlé contends that, "[b]ecause the Contracts allowed the parties to agree on a price and allowed Nestlé to invoke a competitive price, Nestlé cannot be liable for procuring an agreement by 'threatening' to invoke a competitive price."  (Def.'s Obj. at 19.)

Under New York's Uniform Commercial Code ("NYUCC"), "[e]very contract . . . within this Act imposes an obligation of good faith in its performance," meaning that contracting parties must deal with each other with "honesty in fact."  § 1-203; § 1-201(19); *see also 511 W. 23rd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144 (2002) ("In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance").  "While the duties of good faith and fair dealing do not imply obligations inconsistent with other terms of the contractual relationship, they do encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included."  *Id.* at 153 (citation omitted).  A contracting party is permitted to assume that her counterpart will not "do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Id* (citation omitted); *see also Chase Manhattan Bank, N.A. v. Keystone Distrib., Inc.*, 873 F. Supp. 808, 815 (S.D.N.Y. 1994) (explaining that "no party to that contract can do anything which will destroy or injure the right of another party to receive the benefits of the contract.  A party may be in breach of its implied duty of good faith and fair dealing even if it is not in breach of its express contractual obligations").

Nestlé is mistaken to characterize Eastman's "'threatening to invoke' claim" as "seek[ing] to impose an independent obligation" on Nestlé.  (Def.'s Obj. at 20.)  Nestlé is correct, of course, that "the Contracts allowed the parties to agree on a price and allowed Nestlé

to invoke a competitive price."  (Def.'s Obj. at 19.)  This, however, is beside the point: Eastman

is not alleging that Nestlé pushed down Eastman's price by invoking "competitive prices," as

defined in the Contracts, but rather by invoking competitive prices specifically prohibited by the

Contracts.[4]  Of course, nothing in the Contracts permits one party to provide false or misleading

information to the other in order to drive down monthly prices, nor did the Contracts permit

Nestle to represent to Eastman that certain bids met the contractual definition of "competitive

price" when they did not.[5]  To the contrary, under the duty of good faith and fair dealing,

Eastman had the right to assume that Nestlé would not fabricate competitive prices in order to

cajole Eastman into lowering its price for resin.

   Moreover, as Judge Pitman points out in his Report, "Nestlé does not—and cannot—cite

to any case where, as here, parties already bound to a contract, especially a long-term supply

agreement between merchants, were free to misrepresent their compliance with the contract as

they performed."  (Report at 17).  The economic duress cases cited by Nestlé simply miss the

mark.  (*See* Def.'s Obj. at 19-21.)

   Construing the facts in the light most favorable to Eastman, it follows that Nestlé's

alleged behavior violated the duty of good faith and fair dealing.  Therefore, Objection Four has

no merit and is overruled.

---

[4] For instance, the Contracts define "Competitive Price" as not including, *inter alia*, "volume rebates" or "non-contract incentives."  (Contract One at § 5.3(c); Contract Two at § 6.2(c).)  However, Nestlé nonetheless allegedly rolled rebates into the Competitive Price it quoted Eastman, in contravention of the Contracts.  (Amend. Compl. at ¶ 27).

[5] Judge Pitman quite rightly notes the "absurd[ity]" of the notion that Nestlé is entitled under the Contracts to make up false Competitive Prices as long as Eastman never invoked the Contracts' audit provision.  (Report at 18-19).

**III.    Conclusion**

For the foregoing reasons, this Court adopts Magistrate Judge Pitman's Report in its

entirety.

Defendant's motion to dismiss (Dk. No. 27) is GRANTED in part and DENIED in part.

That motion is granted to the extent that Plaintiff's third cause of action based on Nestlé's failure

to place orders for PS 2800 in January 2011 is dismissed.  The motion is denied with respect to

the first and second causes of action.

SO ORDERED.

Dated: New York, New York
       September 28, 2012

_____
                J. PAUL OETKEN
           United States District Judge