UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------- x
EASTMAN CHEMICAL COMPANY,　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　Plaintiff,　　　　　　　　　　: Case No. 11-cv-2589 (KPF)(HBP)
　　　　　　　　　　　　　　　　　　　　　　:
　　- against -　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
NESTLÉ WATERS MANAGEMENT &　　　　　:
TECHNOLOGY,　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　Defendant.　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
------------------------------------------- x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIMS**


**SULLIVAN & WORCESTER LLP**

*Attorneys for Defendant
Nestlé Waters Management & Technology*

**TABLE OF CONTENTS**

I. Rule 16 Does Not Apply to Nestlé's Motion ................................................................. 1

II. If Rule 16 Applies, Nestlé Has Good Cause for its Motion ........................................ 3

III. Nestlé's Motion Should Be Granted Under Rule 15 .................................................. 5

    A. There Has Been No Delay, and Plaintiff Has Suffered No Prejudice ........................ 6

    B. Nestlé Has Stated a Valid Claim For Breach of Contract ............................................ 7

CONCLUSION .................................................................................................................... 10

**TABLE OF AUTHORITIES**

Cases

*A.I.A. Holdings, S.A. v. Lehman Bros.*,
  No. 97 Civ. 4978 (LMM) (HBP), 2001 WL 1631412 (S.D.N.Y. Dec. 18, 2001) ...................... 6

*Affiliated FM Ins. Co. v. Liberty Mech. Contractors, Inc.*,
  12 Civ. 5160 (KPF), 2013 WL 4526246 (S.D.N.Y. Aug. 27, 2013) ..................................... 3, 7

*Aiello v. Burns Int'l Sec. Servs. Corp.*,
  973 N.Y.S.2d 88 (1st Dept. 2013) ........................................................................................ 8, 9

*Bazak Int'l Corp. v. Tarrant Apparel Gr.*,
  378 F. Supp. 2d 377 (S.D.N.Y. 2005) ....................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................. 7, 10

*Bleiler v. Cristwood Contracting Co.*,
  868 F. Supp. 461 (D. Conn. 1994),
  *rev'd in part on other grounds*, 72 F.3d 13 (2d Cir. 1995) ......................................................... 5

*Chimart Assoc. v. Paul*,
  66 N.Y.2d 570 (1986) ................................................................................................................ 8

*Foman v. Davis*,
  371 U.S. 178 (1962) .............................................................................................................. 7-8

*Gross v. Bare Escentuals, Inc.*,
  03 Civ. 3089 (RLC), 2006 WL 3161386 (S.D.N.Y. Oct. 30, 2006) ........................................... 6

*Kassner v. 2nd Ave. Delicatessen Inc.*,
  496 F.3d 229 (2d Cir. 2007) ....................................................................................................... 3

*Morgan Stanley High Yield Secs., Inc. v. Seven Circle Gaming Corp.*,
  269 F. Supp. 2d 206 (S.D.N.Y. 2003) ....................................................................................... 8

*Murphy v. Am. Home Prods. Corp.*,
  58 N.Y.2d 293 (1983) ................................................................................................................ 8

*Parker v. Columbia Pictures Indus.*,
  204 F.3d 326 (2d Cir. 2000) ................................................................................................. 3, 5

*Rachman Bag Co. v. Liberty Mutual Ins. Co.*,
  46 F.3d 230 (2d Cir. 1995) ......................................................................................................... 4

*Rent-A-Center Inc., v. 47 Mamaroneck Ave. Corp.*,
  215 F.R.D. 100 (S.D.N.Y. 2003) ................................................................................................ 5

*State Teachers Retirement Bd. v. Fluor Corp.*,
  654 F.2d 843 (2d Cir. 1981) .................................................................................. 5, 6

*True v. True*,
  63 A.D.3d 1145 (2d Dept. 2009) ................................................................................ 8

*United States v. Cont'l Ill. Nat'l Bank*,
  889 F.2d 1248 (2d Cir. 1989) ...................................................................................... 6

**Statutes**

N.Y. U.C.C. § 1-205(2) ................................................................................................ 8-9

N.Y. U.C.C. § 1-205(3) .................................................................................................... 9

N.Y. U.C.C. § 2-202(a) .................................................................................................... 8

**Rules**

Fed. R. Civ. P. 15(a) ........................................................................................................ 5

Fed. R. Civ. P. 16 ......................................................................................................... 1-3

Nestlé Waters Management & Technology ("Nestlé") seeks leave to assert its counterclaim for breach of contract, which alleges that plaintiff breached the parties' Second Contract by failing to provide Nestlé with a qualified CPET resin and by attempting to pass off its PET bottle-grade resin as a specialty CPET resin to Nestlé.

## I. Rule 16 Does Not Apply to Nestlé's Motion

Nestlé respectfully submits that Rule 16 of the Federal Rules of Civil Procedure is inapplicable to this motion, and plaintiff's suggestion otherwise is hypocritical. The parties have operated since at least August 2013 without an operative scheduling order in place containing certain prospective dates. In actuality, the parties have been proceeding for some time in a manner inconsistent with what plaintiff now contends was the applicable order. In light of plaintiff's own egregious delays, including the production of a supplemental expert report with numerous tables and attachments and the resulting need to reopen the deposition of plaintiff's expert, plaintiff's Rule 16 argument should not be countenanced.

As the Court is aware, the last scheduling order was signed on August 12, 2013 (the "Scheduling Order"). *See* Declaration of Marshall Beil, dated Dec. 11, 2013 ("Beil Decl."), Ex. 1. The Scheduling Order had been submitted to the Court jointly by the parties on May 15, 2013. The dates for discovery established under the Scheduling Order had already passed when it was signed. For example, paragraph 8(a) of the Scheduling Order included a date of August 5, 2013 for plaintiff's expert disclosures. Plaintiff did not make those disclosures until October 2, 2013.

During conferences on September 9 and 11, 2013 ("the September Hearings"), the parties appeared in Court to address numerous issues related to fact discovery. Scheduling also was discussed. No written order was issued following these conferences.

On November 8, 2013, the parties conferred by phone and discussed possible dates for expert depositions that would have been untimely under the Scheduling Order and that were not in accordance with dates discussed at the September Hearings. *See* Declaration of Harry H. Rimm, dated Dec. 23, 2013 ("Rimm Decl."), ¶ 4. During that conversation, Nestlé asked plaintiff's counsel whether the parties should write to Magistrate Judge Pitman regarding scheduling and dates for discovery. *See id*. Plaintiff's counsel said something like: "let's just get it done," and the parties did not write to the Court to request an update to the Scheduling Order. *Id.*

On December 17, 2013, at 6:30 p.m. on the eve of the Court's December 18, 2013 status conference with the parties, plaintiff served a "Supplemental Expert Report of Michael Dansky" along with numerous Tables, a Spreadsheet and Exhibits (collectively, the "Supplemental Dansky Report"). *See* Rimm Decl., Ex. B. The Supplemental Dansky Report incorporated data that plaintiff has always had in its possession -- new "per-line production data on its IntegRex plant for 2010 and data relating to certain inventory adjustments." *Id.* As a result of plaintiff's last-minute submission, during the December 18, 2013 conference, the Court extended expert discovery through January 31, 2014, allowed Nestlé to reopen Mr. Dansky's deposition and permitted Nestlé to submit an amended expert report of its own, if it deems it necessary.

The foregoing procedural history demonstrates that the parties have been proceeding without an operative scheduling order. It further demonstrates that plaintiff is attempting to use the Scheduling Order as the proverbial sword and shield. On one hand, plaintiff argues that "[i]f the last scheduling order entered in this case governs, amendments . . . were due by September 11, 2013." Plaintiff's Memorandum in Opposition, dated Dec. 11, 2013 ("Opposition Memo"), at 6. In sharp contrast, plaintiff still desires to rely upon and admit expert discovery -- its own

experts' reports and related deposition testimony -- that is untimely under the Scheduling Order. Plaintiff must necessarily argue for the admission of such expert discovery because Magistrate Judge Pitman previously held that "given plaintiff's position that damages recoverable on Count 3 require expert testimony, it is also appropriate that plaintiff be precluded from offering non-expert testimony on this issue." Rimm Decl., Ex. C. Without such expert testimony, plaintiff would not be able to prove its alleged damages on Count III.[1]

There simply is no operative scheduling order, and, thus, Nestlé does not have to show good cause under Rule 16. At the very least, since plaintiff insisted that the parties need not request a new scheduling order from the Court, *see* Rimm Decl. ¶ 4, it would be inequitable to require Nestlé to comply with the Scheduling Order and show good cause.

## II.     If Rule 16 Applies, Nestlé Has Good Cause for its Motion

Rule 16 "is designed to offer a measure of certainty in pretrial proceedings." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). "The district court, as an exercise of its broad discretion concerning the pleadings," looks at whether there was good cause on behalf of the moving party in order to balance the "liberal standard" of Rule 15 with Rule 16. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244-45 (2d Cir. 2007).

As this Court has noted, "[d]iligence of the moving party is not, however, the only consideration. The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [plaintiff]." *Affiliated FM Ins. Co. v. Liberty Mech. Contractors, Inc.*, 12 Civ. 5160 (KPF), 2013 WL 4526246, *3 (S.D.N.Y. Aug. 27, 2013)

---

[1] As Nestlé noted in its December 18, 2013 letter to the Court, the Supplemental Dansky Report may be otherwise inappropriate. Nestlé may move to preclude it. If the Court is inclined not to grant Nestlé's requested leave to file its proposed amendment, the Court should strike the Supplemental Dansky Report in the interest of fairness.

3

(internal citations and quotations omitted).  Under this standard, Nestlé can easily show good cause because it was diligent, and there would be no prejudice to plaintiff.

Nestlé had previously considered including a claim for breach of contract.  *See* Rimm Decl. ¶ 2.  Nestlé had determined, however, that it did not have sufficient factual support for its claim.  *See id*.  The key (though not sole) missing element was damages; Nestlé did not believe that it had suffered damages independent of the harm caused by plaintiff's fraudulent behavior. *See id*. ¶¶ 2-3.  The additional information regarding Nestlé's damages was revealed during and in connection with fact and expert discovery: meetings with Nestlé's Patrick Bouzekri and Nestlé's expert.  *See id.; see also generally Rachman Bag Co. v. Liberty Mutual Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995) (finding no abuse of discretion in allowing amendment to include fraud defense four years after defendant had considered, but rejected, including it in initial answer).

On September 25, 2013, Nestlé produced the underlying pricing data that related to its breach of contract counterclaim, noting that it was "now likely to rely" on such data.  *See* Rimm Decl., Ex. D.  Plaintiff has never objected to this production.  On October 2, 2013, Nestlé produced the expert report of Charles Mikulka, Nestlé's expert on damages, finding that the damages Nestlé suffered in connection with plaintiff's breach were approximately $326,000.  *See* Rimm Decl., Ex A at 19-21.  Plaintiff has never objected to Mr. Mikulka's report.

Moreover, plaintiff has not suffered any prejudice.  Plaintiff asserts that Nestlé should have amended by September 11, 2013 pursuant to the Scheduling Order.  On that very day, however, Nestlé noted before the Court -- without objection from plaintiff -- that it was considering an amendment.  Indeed, plaintiff can point to nothing that would have been different if Nestlé had sought leave to amend on September 11, instead of when it did.  Fact discovery was already closed, *see* Beil Decl., Ex. 1 ¶ 7(a) (setting fact discovery deadline under the Scheduling

4

Order at July 19, 2013), and plaintiff still had the opportunity to question Mr. Mikulka at his deposition on December 5, 2013. Nevertheless, plaintiff asked no questions of Mr. Mikulka relating to damages despite having received Nestlé's motion well in advance. Thus, there was no prejudice whatsoever caused by the passing of time from September 11, 2013, when plaintiff asserts an amendment would have been timely, until November 26, 2013, when the motion to amend was served.

Finally, the breach of contract claim that Nestle seeks to add is closely related to the issues already present in the case. "The amended claim [is] obviously one of the objects of discovery and related closely to the original claim[s]," *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981), which "alleviate[s]" any concern of prejudice plaintiff might suffer. *Bleiler v. Cristwood Contracting Co.*, 868 F. Supp. 461, 463–64 (D. Conn. 1994) (concern of prejudice "may be alleviated if the new claim arises from a similar set of operative facts and a similar time as the existing claims") *rev'd in part on other grounds*, 72 F.3d 13 (2d Cir. 1995). Simply put, plaintiff has suffered no prejudice, and the Court should find good cause for Nestlé's proposed amendment.[2]

### III. Nestlé's Motion Should Be Granted under Rule 15

Plaintiff does not dispute that Rule 15(a) is a "lenient standard," *Parker*, 204 F.3d at 340, under which leave to amend a pleading should be "freely granted when justice so requires." Fed. R. Civ. P. 15(a). Plaintiff argues, however, that futility and undue delay require denying Nestlé's motion. *See* Opposition Memo at 8-14. Nestlé respectfully suggests that plaintiff is wrong on both counts.

---

[2] This is very different from *Rent-A-Center Inc., v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100 (S.D.N.Y. 2003), where the court had explicitly extended discovery deadlines in various scheduling orders and left untouched the deadlines for amendments. Moreover, the party seeking amendment in that case had already been granted leave to amend once previously. *See id.* at 104.

A.  *There Has Been No Delay, and Plaintiff Has Suffered No Prejudice*

The Second Circuit has held that "[m]ere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Fluor Corp.*, 654 F.2d at 856; *see Gross v. Bare Escentuals, Inc.*, 03 Civ. 3089 (RLC), 2006 WL 3161386, *3 (S.D.N.Y. Oct. 30, 2006) ("motions to amend are often granted after years of delay"). Nestlé's arguments, *see supra*, demonstrate that Nestlé did not delay and, even assuming any delay, such delay was not undue. *See A.I.A. Holdings, S.A. v. Lehman Bros.*, No. 97 Civ. 4978 (LMM) (HBP), 2001 WL 1631412, at *2-*3 (S.D.N.Y. Dec. 18, 2001).

First, "[s]ince discovery is still ongoing, the amendment will not significantly delay resolution of this matter," *Gross*, 2006 WL 3161386 at *3, and, given the parties have not even engaged in summary judgment motion practice, there is little danger of any delay at all. *See A.I.A. Hldgs., S.A.*, 2001 WL 1631412, at *3 (allowing amendment where summary judgment motion "is still pending, the Pretrial Order has not yet been prepared and a trial date has not been set").

Second, plaintiff's assertion of prejudice is based on its conclusory need for undefined "document production and possibly deposition testimony." Opposition Memo at 15. As to documents, once Nestlé determined that it might rely on pricing data to assert a valid counterclaim for breach of contract, Nestlé promptly supplemented the earlier production that had been ordered by Magistrate Judge Pitman by producing a pricing spreadsheet in the same format that plaintiff had used to produce its own pricing data. *See* Rimm Decl., Ex. D. As to a deposition, plaintiff failed to ask any questions on the subject of damages at Mr. Mikulka's deposition. Regardless, the law is clear that plaintiff's "burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *United States v. Cont'l Ill. Nat'l Bank*, 889 F.2d 1248, 1255 (2d Cir. 1989).

6

Finally, even if there were some basis to plaintiff's complaints of delay and prejudice, which there is not, they are thoroughly inappropriate given plaintiff's recent production of the Supplemental Dansky Report. As this Court is aware, on December 17, 2013, the eve before the status conference with the Court, plaintiff served the Supplemental Dansky Report, a report with new Tables, Exhibits and a Spreadsheet based on 2010 data that plaintiff has always had in its possession. *See* Rimm Decl., Ex. B. It is difficult to understand how plaintiff can maintain that Nestlé is the party seeking to delay the proceedings in light of such behavior. Nor can plaintiff's claims of prejudice from additional discovery be given any credence in light of plaintiff's admission, in the cover letter accompanying the Supplemental Dansky Report, that it will make Mr. Dansky available for an additional deposition. *See id*. Here, expert discovery has not been completed, and the claim that Nestlé seeks to add will require little, if any, additional discovery. As a result, plaintiff has shown neither delay nor prejudice.

### B.  *Nestlé Has Stated a Valid Claim for Breach of Contract*

Nestlé's motion cannot be denied as futile for at least two reasons. Nestlé does not claim that the language of the parties' Second Contract is ambiguous and does not seek to use extrinsic evidence to "create any ambiguity." *See* Opposition Memo at 11-12. New York law is clear that the parties' course of conduct and common understanding and usage in an industry can modify, explain and supplement a written contract. *See* discussion *infra*.

Accepting all of Nestlé's factual assertions as true, which the Court must, Nestlé's claim would survive a motion to dismiss and, thus, the proposed amendment would not be futile. It is well established that a proposed amendment is not futile if the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "If the underlying facts or circumstances relied upon by [Nestlé] may be a

proper subject of relief, [it] ought to be afforded an opportunity to test [its] claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Nestlé maintains that the parties had always intended to include a requirement of qualification but, by mutual mistake, neglected to insert ParaStar 2800 into several parts of the pre-existing boilerplate. Indeed, "the parties . . . reached an oral agreement and, unknown to either, the signed writing [did] not express that agreement." *Chimart Assoc. v. Paul*, 66 N.Y.2d 570, 573 (1986). "Because the thrust of [this] claim is that a writing does not set forth the actual agreement of the parties," the parol evidence rule does not apply, *id*. at 573, and Nestlé "may rely on extrinsic evidence even if the agreement is not ambiguous." *True v. True*, 63 A.D.3d 1145, 1147 (2d Dept. 2009).[3]

Nestlé further argues that the parties' course of dealing and performance modified the Second Contract. "[T]he law is abundantly clear in New York that, even where a contract specifically contains a . . . provision stating that it cannot be modified except by a writing, it can, nevertheless, be effectively modified by actual performance and the parties' course of conduct." *Aiello v. Burns Int'l Sec. Servs. Corp.*, 973 N.Y.S.2d 88, 96 (1st Dept. 2013). Plaintiff's argument to the contrary is, quite simply, not correct.

Under the New York Uniform Commercial Code, which applies to this contract between merchants for the sale of goods and which this Court considered in connection with Nestlé's motion to dismiss, the terms of a written contract "may be explained or supplemented" by usage of trade or course of performance. N.Y. U.C.C. § 2-202(a). Usage of trade is "any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify

---

[3]   The cases cited by plaintiff are inapposite. *See* Plaintiff's Opposition at 12. First, neither *Morgan Stanley High Yield Secs., Inc. v. Seven Circle Gaming Corp.*, 269 F. Supp. 2d 206 (S.D.N.Y. 2003), nor *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293 (1983), applies the UCC. Second, both cases dealt with extrinsic evidence offered for the purpose of contradicting explicit contractual language. Plaintiff has not and cannot point to specific language in the Second Contract that would be inconsistent with its obligation to sell a qualified CPET resin.

8

an expectation that it will be observed with respect to the transaction in question." N.Y. U.C.C. § 1-205(2).

"Usage of trade is relevant not only to the interpretation of express contract terms, but may also itself constitute contract terms. Thus, standard industry custom and practice is relevant when interpreting contracts under the UCC." *Bazak Int'l Corp. v. Tarrant Apparel Gr.*, 378 F. Supp. 2d 377, 390 (S.D.N.Y. 2005). *See also* N.Y. U.C.C. § 1-205(3) ("any usage of trade in the vocation or trade in which [the parties] are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement"). There are ample facts in the record to support Nestlé's claims.

First, the parties behaved as if qualification was required. Throughout the period in which Nestlé would have purchased ParaStar 2800 had it been qualified, all plaintiff did was push Nestlé to assist it in qualifying ParaStar 2800 at APT, a third-party converter. *See*, *e.g.*, Rimm Decl. Ex. E (requesting Nestlé's "help in order to get this project moving"). Moreover, plaintiff's David Fischer, the person in charge of the ParaStar 2800 project, agreed that qualification was required before Nestlé was obligated to purchase ParaStar 2800. *See* Rimm Decl., Ex. F at 100:3-100:16; 179:21-180:3. Mr. Fischer also testified that plaintiff's ParaStar 2800 had to qualify at [a third party converter] in order to sell, that getting ParaStar 2800 to work on [the converter's] technology was part of the qualification process and that "if it didn't qualify, [plaintiff Eastman] couldn't sell it." *Id.* at 100:3-100:16; 179:21-180:3, 220:11-220:17.

Second, industry custom and practice dictates that qualification is a precondition to sale. As Charles Mikulka, Nestlé's expert, stated in his report: "The manufacture of ovenable trays is a specialty application using a CPET resin, and a supplier like Eastman would expect that its

9

specialty resin would have to be qualified for that application prior to sale and use." Rimm Decl. Ex. A at 3; *see also id.* at 18-19.

Plaintiff's claim that Nestlé's proposed amendment is futile must be rejected because, when accepted as true as the Court must, Nestlé's factual allegations are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.

## Conclusion

For the foregoing additional reasons, Nestlé respectfully requests that its motion for leave to file the Amended Answer and Counterclaims be granted.

Dated: New York, New York
December 23, 2013

**SULLIVAN & WORCESTER LLP**

By: _____
Harry H. Rimm
Michael Granne

1633 Broadway, 32nd Floor
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Defendant Nestlé Waters Management & Technology*