UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-x

EASTMAN CHEMICAL COMPANY,                   :
                                            :
                    Plaintiff,              :
                                            :
        - against -                         :        11-Civ-2589 (KPF) (HBP)
                                            :
NESTLÉ WATERS MANAGEMENT &                  :
TECHNOLOGY,                                 :
                                            :
                    Defendant.              :

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-x

## MEMORANDUM IN OPPOSITION TO DEFENDANT NESTLÉ'S MOTION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIMS

**McGUIREWOODS LLP**
1345 Avenue of the Americas
7th Floor
New York, New York 10105
212 548-7004
*Attorneys for Plaintiff Eastman Chemical Company*

# TABLE OF CONTENTS

**Page**

BACKGROUND ............................................................................................ 1

ARGUMENT ............................................................................................... 3

    I.    DEFENDANT'S MOTION SHOULD BE DENIED UNDER
        RULE 16(b) ..................................................................................... 5

    II.   DEFENDANT'S MOTION SHOULD BE DENIED UNDER
        RULE 15(a) ..................................................................................... 8

        A.    Nestlé's Proposed Amendment Is Futile ........................................ 9

        B.    Given Nestlé's Undue Delay, Granting Its Motion Would
            Prejudice Eastman and This Court ............................................ 13

CONCLUSION ........................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
    106 F.3d 11 (2d Cir. 1997)..................................................................................9

*Bridgeport Music Inc. v. UMG Recordings, Inc.*,
    2008 U.S. Dist. LEXIS 1465 (S.D.N.Y. Jan. 10, 2008)...............................9

*Burch v. Pioneer Credit Recovery, Inc.*,
    551 F.3d 122 (2d Cir. 2008)...................................................................8, 9, 13

*Foman v. Davis*,
    371 U.S. 178 (1962)............................................................................................8

*Frenkel v. New York City Off-Track Betting Corp.*,
    611 F. Supp. 2d 391 (S.D.N.Y. 2009).........................................................13

*Grochowski v. Phoenix Constr.*,
    318 F.3d 80 (2d Cir. 2003)................................................................................5

*Indep. Energy Corp. v. Trigen Energy Corp.*,
    944 F. Supp. 1184 (S.D.N.Y. 1996)...........................................................11

*Lehman v. Garfinkle*,
    No. 08-9385, 2013 U.S. Dist. LEXIS 53796 (S.D.N.Y. 2013).............4, 5

*Morgan Stanley High Yield Secs., Inc. v. Seven Circle Gaming Corp.*,
    269 F. Supp. 2d 206 (S.D.N.Y. 2003).......................................................12

*Oneida Indian Nation v. City of Sherrill*,
    337 F.3d 139 (2003)............................................................................................9

*Sissel v. Rehwaldt*,
    519 Fed. Appx. 13 (2d Cir. 2013)..........................................................8, 13

*Smith v. CPC Int'l, Inc.*,
    104 F. Supp. 2d 272 (S.D.N.Y. 2000)..........................................................9

*W.W.W. Assoc., Inc. v. Giancontieri*,
    77 N.Y.2d 157 (1990)......................................................................................11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15(a) ...................................................................................................4, 8, 13

Fed. R. Civ. P. 12(b)(6)..................................................................................................9

Fed. R. Civ. P. 16(b) ....................................................................................................4, 5, 8

## BACKGROUND

Plaintiff Eastman Chemical Company ("Eastman") respectfully submits this memorandum in opposition to defendant Nestlé Waters Management & Technology's ("Nestlé" or "Defendant") motion for leave to amend its answer and counterclaims.

### Preliminary Statement

Nestlé filed its answer and counterclaims on October 26, 2012, more than a year and a half *after* the original complaint was filed, and after Nestlé's motions to dismiss and for forum non conveniens had been denied. By the time Nestlé answered, Eastman had produced some 2,800 documents. As there are no *Nestlé* documents that support, or even provide a basis for, fraud allegations, it was the Eastman documents produced before the answer that Nestlé appears to have relied upon to draft its two fraud counterclaims.

Nestlé's proposed third counterclaim is based on the same set of alleged misrepresentations as its first two counterclaims. Nothing has been produced in discovery since October 2012 that reveals the existence of this purported new claim that was not apparent to Nestlé and its lawyers by October 2012.

Indeed, in the fourteen months since its answer and counterclaims were originally filed, Nestlé fought efforts by Eastman to obtain discovery relating to Nestlé's purchase of CPET resins from third parties—the essence of Nestlé's new claim for damages. Only when Nestlé filed its second report from its expert Charles Mikulka on October 30, 2013, did Nestlé offer—volunteer, actually—selected information about the prices it paid for CPET from third parties in 2010.

The essence of Nestlé's "new" claim is that the Second Contract required Eastman to produce "qualified" ParaStar 2800, which Eastman allegedly could not provide. As a result, Nestlé claims it had to purchase CPET resin from another source—its sole supplier before Eastman entered the picture—at a higher cost than provided in the Eastman-Nestlé Second Contract.

Leave aside for the moment what Nestlé's pricing allegations imply for its fraud counterclaims, which seek rescission because the agreed-upon pricing mechanism allegedly overstates the appropriate price. The principal factual and legal allegation underlying Nestlé's new claim is that the parties' Second Contract required Eastman to "qualify" the resin for use by Nestlé's converter, tray manufacturer APT, *before* Nestlé had to purchase a single pellet, and Eastman failed to meet that test. Eastman, accordingly, is liable for Nestlé's costs to cover.

Nestlé's belated attempt to add this claim fails every applicable test: it is untimely, the claim is futile, Nestlé has delayed unduly, and Eastman will be prejudiced at this late date, the eve of trial, having been previously precluded by Nestlé from discovery on this issue on the grounds of relevance.

Timeliness: This Court set deadlines in its several Rule 16(b) Scheduling Orders for the filing of amended pleadings. The deadline set in the first Scheduling Order passed on November 16, 2012 without an amendment from either party. The amended pleading language was carried from one Scheduling Order to the next without change, making the last deadline to amend September 11, 2013. That date, too, passed without any amendments. Nestle filed this motion much later—on November 27, 2013 (the day before Thanksgiving). To overcome the deadlines in the Scheduling Orders, however, Nestlé must demonstrate "good cause," which it has not even argued, much less shown.

2

Futility:  Under Fed. R. Civ. P. 15(a), Nestlé's motion also fails.  The "qualification" requirement for ParaStar 2800 upon which Nestlé bases its claim appears nowhere in the Second Contract.  There *is* qualification language in both the First and Second Contracts for other products, suggesting that the parties—large, sophisticated and represented by counsel—well knew how to write a qualification requirement. The contractual omission with regard to ParaStar 2800 is fatal to Nestlé's new claim.  Under long-standing and accepted principles of contract construction in New York, the absence of any qualification language for ParaStar 2800 and the lack of any ambiguity in the Second Contract on this subject, separately and together, preclude completely Nestlé's attempt to present parole evidence to create an obligation to which the parties never agreed.

Prejudice and Undue Delay:  This case is ready for dispositive motions and trial. Adding this new claim more than fourteen months after Nestlé's initial pleading and even longer after it had Eastman's documents on which it appears to rely constitutes undue delay.  Nestlé's purpose can only be to push out the final resolution of this case.  Nestlé prevented Eastman from getting discovery on Nestlé's purchases of CPET from another supplier in 2010, but Eastman will need the denied discovery—documents, and possibly testimony—on that subject to prepare a defense to Nestlé's proposed new counterclaim. Nestlé's inordinate delay in asserting this claim and its prior actions on the subject matter it now seeks to assert cannot be allowed to prejudice Eastman or further extend this case.

Nestlé's motion should be denied in all respects.

## ARGUMENT

In deciding this motion for leave to amend, two rules govern.  Nestlé cites and discusses only one.  In *Parker v. Columbia Pictures Indus.*, 204 F. 3d 325 (2d Cir. 2000),

3

the Second Circuit held that "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause" under Rule 16(b). Some courts in this Circuit have interpreted *Parker* as setting forth a two-step process for considering motions for leave to amend in a case once a responsive pleading has been filed and the deadline for amending pleadings set by the Court's scheduling order has expired. *See Rent-A-Center, Inc., v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 103 (S.D.N.Y. 2003) (holding that it "is settled law that when a responsive pleading has been filed and a party seeks an amendment after the pretrial scheduling order[,] Rule 16 . . . is controlling and the movant must satisfy the more stringent standard of good cause"); see also *Lehman v. Garfinkle*, 2013 U.S. Dist. LEXIS 53796 (S.D.N.Y. 2013) (holding that only if a party is able to show good cause, "would the Court need to consider whether the proposed amendment would be futile, unduly prejudicial, or otherwise improper based on the Rule 15(a) standards that otherwise govern motions to amend") (citing *Estate of Ratcliffe*, No. 05-10272, 2007 U.S. Dist. LEXIS 78070, at *11 (S.D.N.Y. Oct. 19, 2007)).

The standards and considerations under both rules are relevant to the determination of whether a motion for leave to amend is justified. "Where the court has filed a scheduling order pursuant to Rule 16(b) . . . the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement in Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." *Affiliated FM Ins. Co. v. Liberty Mech. Contrs. Inc.*, No. 12-5160, 2013 U.S. Dist. LEXIS 122030, at *11 (S.D.N.Y. Aug. 27, 2013) (quotations and citations omitted). Further, in conducting the Rule 16(b) analysis, in addition to

4

inquiring into the diligence of the moving party, the district court may also, in its discretion, "consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Id.* (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244-45 (2d Cir. 2007)).

In this case, under both Rule 16(b) and Rule 15(a), Nestlé's motion should be denied.

## I.   DEFENDANT'S MOTION SHOULD BE DENIED UNDER RULE 16(b)

To establish good cause, "the movant must demonstrate that it has been diligent in its efforts to meet the Court's deadlines." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003). "In other words, the [moving] party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Lehman*, 2013 U.S. Dist. LEXIS 53796, at *24 (citing *Rent-A-Center Inc.*, 215 F.R.D. at 104). A party fails to act with sufficient diligence when it bases "a proposed amendment on information that the party knew, or should have known, in advance of the deadline." *Id.*

A motion to amend a pleading filed after the deadline set in the scheduling order "must be denied" unless the moving party demonstrates good cause for not having included the proposed amendment in the original answer and counterclaim. *Rent-A-Center Inc.*, 215 F.R.D. at 103. In its memorandum, Nestlé does mention either the scheduling order or Rule 16 and does not even attempt to argue that it has satisfied its burden of demonstrating good cause. On this basis alone, its motion for leave to amend should be denied.

On October 2, 2012, Magistrate Judge Pitman issued the first Scheduling Order in this case that set the deadline for motions to amend or to join additional parties. (*See*

Declaration of Marshall Beil, dated December 11, 2013, ("Beil Decl.") at Ex. 1.)  The

Scheduling Order provided that motions to amend or to join additional parties were due

"within 30 days from the date of this Order or 21 days from the date the original pleading

was filed, whichever is later."  (*Id.*)  Defendant filed its answer and counterclaims on

October 26, 2012.  Defendant, therefore, had until November 16, 2012 to amend its

answer and counterclaims or to join additional parties.  It did neither.

On March 22, 2013, and again on August 12, 2013, the Court entered new

scheduling orders that included the same provisions regarding motions to amend:

amendments "shall be filed within 30 days of this Order or 21 days from the date the

original pleading was filed, whichever is later."  (*Id.*)  If the last scheduling order entered

in this case governs, amendments to pleadings were due by September 11, 2013.

In *Rent-A-Center, Inc.*, the defendants filed a motion to amend their answer "long

after" (four months) the expiration of the deadline set in the controlling discovery order.

215 F.R.D. at 101, 103.  Defendants sought to amend their answer and counterclaim to

add a "new" claim for the costs of defending a concurrent lawsuit pursuant to a clause in

the lease that was the subject of the litigation.  *Id.*  Judge McMahon denied the motion for

lack of good cause, concluding that "it appears that the defendants' failure to comply

with the Court's Scheduling Order resulted from a lack of diligence, because the

substance of the defendants' 'new' claim was known when the defendants filed their

original amended answer and added their counterclaim.  Defendants seek to add a new

claim for the costs incurred in defending the present suit, pursuant to a clause in the lease

signed by both parties.  But defendants[ ] knew about this clause, and knew as well that

they would incur costs in defending this action, when they amended their original answer

and asserted their counterclaim . . . ."  *Id.* at 104.  The defendants offered no explanation

6

for why they did not include the proposed amendment in their original counterclaim or explain why they could not reasonably meet the deadline in the scheduling order. *Id.* at 104-05.

The same reasoning applies here. Nestlé makes no effort to explain why it failed to include in its earlier pleading its proposed new breach of contract claim based on the contract that has been the subject of the pending litigation since day one in its first answer and counterclaims or why it could not reasonably meet the deadlines set in this Court's Scheduling Order.

Nestlé can hardly argue that this is a new claim or that it is based on newly obtained evidence. Nestlé's proposed amendment asserts the partial breach of the Second Contract that is the subject Eastman's original Complaint, filed on April 15, 2011, of Eastman's amended Complaint filed on July 20, 2011, and of Nestlé's counterclaims filed on October 26, 2012.

While Nestlé asserts in its memorandum that its proposed amendments "relate to additional facts revealed during and in connection with fact and expert discovery," (Def. Mem. 1), fact depositions were concluded on August 20, 2013, and document discovery was essentially complete on October 16, 2013. Moreover, Nestlé had the Eastman documents on which it based its initial counterclaims well before October *2012*.

It strains credulity that it took Nestlé and its counsel almost a month after it served its expert report to "discover" some of the basic facts of this case and allege a garden variety breach of contract claim.

Nestlé does not allege what new information came to light after the applicable deadlines to justify its delay. Its proposed amendment adds two "new" factual allegations as the basis for its proposed third counterclaim, but both have been known to (or were

previously alleged by) Nestlé in its original counterclaim: (1) that ParaStar 2800 was identical to bottle-grade ParaStar 7000 and (2) that Eastman allegedly did not deliver a qualified CPET resin to Nestlé, as Nestlé has defined "qualified."

Nestlé's contention that these are somehow "new" facts is completely inconsistent with the record in this case, as the same facts form the basis of Nestlé's defenses to Eastman's Count III and Nestlé's two existing counterclaims.

Therefore, just like the defendants' proposed amendment in *Rent-A-Center Inc.*, Nestlé's proposed amendment consists of facts that it knew long before the deadline for filing amendments set by this Court's Scheduling Order, and which have been an integral part—explicitly and implicitly—of its strategy in this suit since at least the filing of Nestlé's initial answer and counterclaims.

Thus, Nestlé has made *no* showing of good cause and has provided no evidence of diligence in its efforts to meet this Court's deadline for amendments. Nestlé made no mention of its intention to move at the November 12, 2013 status conference before Judge Failla, and Nestlé waited until the Wednesday before Thanksgiving to serve its motion. Because Rule 16(b) controls in in this instance, this Court should deny Nestlé's motion for lack of good cause—indeed, any cause.

## II.     DEFENDANT'S MOTION SHOULD BE DENIED UNDER RULE 15(a)

Rule 15(a), when it applies, states that leave to amend should be granted "when justice so requires." Fed. R. Civ. P. 15(a). Justice, however, does not so require here as "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit*

*Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178,

182 (1962)); *Sissel v. Rehwaldt*, 519 Fed. Appx. 13, 17-18 (2d Cir. 2013).

## A.    Nestlé's Proposed Amendment Is Futile

It is well established that leave should be denied when the amendment would be

futile. *Burch*, 551 F.3d at 126; *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106

F.3d 11, 18 (2d Cir. 1997).  In the Second Circuit, a motion to amend is futile if the

amendment would not withstand a motion to dismiss pursuant to Rule 12(b)(6).  *Oneida*

*Indian Nation v. City of Sherrill*, 337 F.3d 139, 168 (2003); *Smith v. CPC Int'l, Inc.*, 104

F. Supp. 2d 272, 274 (S.D.N.Y. 2000); *Bridgeport Music Inc. v. UMG Recordings, Inc.*,

2008 U.S. Dist. LEXIS 1465, *20 (S.D.N.Y. Jan. 10, 2008).

To survive a Rule 12(b)(6) motion to dismiss, the non-moving party "must

provide the grounds upon which [its] claim rests through factual allegations sufficient to

raise a right to relief above the speculative level." *ATSI Commc'ns, Inc. v. Sharr Fund,*

*Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (internal quotation omitted).  The pleading must

allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony*

*BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (internal quotation omitted). "A

claim has facial plausibility when the [non-moving party] pleads factual content that

allows the court to draw the reasonable inference that the [moving party] is liable for the

alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When applying this standard, the Court accepts as true all well-pleaded factual

allegations, but will not accept "mere conclusory statements" or "threadbare recitals of

the elements of a cause of action." *Id.*  If the Court cannot infer anymore than "the mere

possibility of misconduct" from the allegations, the Court should dismiss the pleading.

*Starr*, 592 F.3d at 321 (quoting *Iqbal*, 556 U.S. at 679).

Nestlé's proposed third counterclaim for breach of contract alleges that Eastman breached the Second Contract "by failing to provide Nestlé with a qualified CPET resin . . . ." (Def. Mem. Ex. C ¶ 88.) This is essentially a legal conclusion; that the Second Contract required Eastman's CPET resin to be "qualified" before Nestlé had an obligation to purchase ParaStar2800.

Paragraph 62 of its proposed "new" claim is the closest Nestlé comes to defining what it means by a "qualified CPET resin." Nestlé alleges in paragraph 62 that "Eastman failed to qualify ParaStar2800 at APT . . . ."[1] That issue—whether APT's qualification of ParaStar 2800 was a precondition to Nestlé's obligation to purchase ParaStar 2800 under the Second Contract—has been the central focus of Nestlé's defenses and counterclaims since it filed them in October 2012. Nestlé's new counterclaim fails as a matter of law, however, because the Second Contract did not require Eastman to qualify ParaStar2800 at APT as a precondition of Nestlé's obligation to buy it.

The two relevant provisions of the Second Contract are Article 4.1, which provides that "[Eastman] shall sell and deliver to [Nestlé] at the Supply Locations and [Nestlé] agrees to purchase for each Year throughout the term of this Agreement, the quantities of Product(s) defined in Annex 4," and Annex 4, which provides, "Minimum Annual Quantities of ParaStar 2800 purchased by [Nestlé] will be at least 24,000,000 pounds for 2010." (*See* Beil Decl. Ex. 2.) The Second Contract contains absolutely no language requiring ParaStar 2800 to be qualified before Nestlé is obligated to meet its minimum purchase requirement.

---

[1] Nestlé could not plead other definitions of qualification in good faith. It is undisputed that ParaStar2800 was qualified for sale as a CPET by Keller & Heckman, which is the industry equivalent of FDA approval, as all parties and their experts have agreed. (*See* Beil Decl. Ex. 4.) Further, Nestlé itself had qualified ParaStar2800 for use by its other tray manufacturer, Mullinix, in making trays for Nestlé frozen food products. (*See* Beil Decl. Ex. 5.)

Nestlé is unable to prove its claim for breach of contract without resorting to evidence outside the four corners of the Second Contract. It cannot do so here.

Under New York law, "it is well settled that extrinsic evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." *W.W.W. Assoc., Inc. v. Giancontieri*, 77 N.Y.2d 157, 163 (1990). Where the language of a contract is unambiguous, as here, the question of interpretation is one of law, based on the four corners of the document. *Indep. Energy Corp. v. Trigen Energy Corp.*, 944 F. Supp. 1184, 1191 (S.D.N.Y. 1996) (holding that where a contract is unambiguous, "the intent of the parties must be determined from their final writing and no parole evidence or extrinsic evidence is admissible").

As quoted above, the relevant provisions of the Second Contract cannot be more complete, clear, or unambiguous. The Second Contract does contain a requirement that Nestlé qualify *another* resin, the antimony-free equivalent to Eastman's PJ003—it was ultimately called ParaStar 4800—before Nestlé had to purchase that new resin in the minimum quantities contemplated by the Second Contract. (*See* Beil Decl. Ex. 2, Art. 3.) In the event the replacement product was not qualified by a certain date, Nestlé had the option to terminate any obligation to purchase PJ003 or its successor. (*Id.*) There is no similar clause relating to ParaStar 2800.[2]

The parties clearly knew how to write a qualification precondition. Thus, under the long-standing canon of contract interpretation by which the inclusion of one is the exclusion of the other, *Uribe v. Merchs. Bank of N.Y.*, 91 N.Y.2d 336, 340 (1998), the parties' required qualification of ParaStar 4800 as a precondition to Nestlé's obligation to

---

[2]   There is a similar provision in the First Contract providing that unless Nestlé qualified ParaStar 4000 for bottles by a date certain, the agreement would terminate. (*See* Beil Decl. Ex. 3, Art. 10.3.; *see also*, Art. 3 and 4.2 which also discuss qualification.)

purchase it in the Second Contract but did not include such a condition precedent regarding ParaStar 2800 means that the parties did not intend qualification by Nestlé or its converter to be a precondition to Nestlé's obligation to purchase ParaStar2800.

Further, the Second Contract contains a provision requiring that any amendments or modifications be in writing signed by both parties. (*See* Beil Decl. Ex. 2, Art. 16.) Where a contract contains explicit language requiring that any additional terms or modifications of the contract be in writing, New York courts hold that there is a conflict between the clause and any alleged oral condition precedent. *Morgan Stanley High Yield Secs., Inc. v. Seven Circle Gaming Corp.*, 269 F. Supp. 2d 206, 219 (S.D.N.Y. 2003). "It simply defies logic to contend that a condition precedent . . . would not contradict a term, agreed to by both parties." *Id.* at 220. Thus, Nestlé's allegations that Eastman varied the terms of the express contract to incorporate qualification as a condition precedent to Nestlé's obligation to buy ParaStar 2800 would be barred as a matter of law.

Because qualification was not a condition precedent under the Second Contract with respect to Nestlé's requirement to purchase ParaStar 2800, although it was a condition precedent to Nestlé's obligation to purchase another resin under the same contract, and Nestlé cannot vary the contract by extrinsic evidence as a matter of law, Nestlé's proposed third counterclaim would not survive a motion to dismiss.

Further, Nestlé's effort to back-door its notion of qualification as a precondition to Nestlé's obligation to buy into the Second Contract under the guise of Eastman's duty of good faith and fair dealing (Nestlé's proposed amendment at ¶ 88) also fails. Under New York law, "No obligation can be implied [under the duty of good faith and fair dealing], however, which would be inconsistent with other terms of the contractual relationship." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983).

Thus, if this Court reaches the Rule 15(a) argument, Nestlé's motion for leave to amend should be dismissed as the exercise in futility that it is.

**B.    Given Nestlé's Undue Delay, Granting Its Motion Would Prejudice Eastman and This Court**

"Undue prejudice warrants denial of leave to amend where the proposed claim will significantly increase the scope of discovery when the case is ready for trial." *Preistley v. Am. Airlines, Inc.*, No. 89-8265, 1991 U.S. Dist. LEXIS 4804, at *4-*5 (S.D.N.Y. Apr. 12, 1991) (citing *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987)); *Affiliated FM Ins. Co.*, 2013 U.S. Dist. LEXIS 122030, at *11-*12, *19-*24; *Credit Suisse First Boston LLC v. Coeur D'Alene Mines Corp.*, No. 03-9547, 2005 U.S. Dist. LEXIS 1893, at *12 (S.D.N.Y. Feb. 10, 2010) (denying motion to amend filed less than a month before the discovery deadline, that would require an extension of the discovery period, lead to additional discovery expenditures for plaintiff, potential additional motion practice, and "significantly delay the resolution of this dispute, which plaintiff commenced over one year ago").

Courts in this Circuit also routinely deny motions to amend "when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay." *See* e.g. *Burch*, 551 F.3d at 125-26 (affirming denial of a motion to amend where the motion did not raise a new issue for the court); *Sissel*, 519 Fed. Appx. at 17-18 (affirming denial of motion to amend where proposed amendment was submitted two years after original pleading and there was no explanation for delay or why the new claims were not originally asserted); *Frenkel v. New York City Off-Track Betting Corp.*, 611 F. Supp. 2d 391, 394-395 (S.D.N.Y. 2009) ("Leave to amend a complaint will generally be denied when the motion to amend is filed solely in an attempt to prevent the Court from granting

13

a motion to dismiss or for summary judgment, particularly when the new claim could have been raised earlier."). Nestlé delayed over fourteen months after it filed its initial responsive pleading to seek to amend and even longer than that since it had the facts on which its proposed amendment is based. Nestlé cannot explain away its delay.

Nestlé's proposed amendment causes undue prejudice to Eastman and the Court in this case. The circumstances of Nestlé's motion in this case are very different from those of the defendant's motion to amend to add a statute of limitations defense in *Affiliated FM Insurance Co.*, 2013 U.S. Dist. 122030. In that case, the Court properly granted the defendant's motion finding that the amendment would not unfairly prejudice the plaintiff. *Id.* at *19. Both fact and expert discovery were still ongoing in that case when the defendant filed its motion. *Id.* at 20-21. The Court also determined that no additional discovery would be necessary to defend against a statute of limitations defense. Allowing the proposed amendment, therefore, would not cause defendant further cost or delay the proceedings. *Id.* at 21-22.

The facts in this case are much different. On December 10, Eastman submitted its pre-summary judgment motion letter to Judge Failla, and on December 18, 2013, Judge Failla will set a dispositive motion schedule and a trial date. Adding Nestlé's proposed new claim will delay that final resolution because it will require additional fact discovery, and possibly depositions, on a topic that Nestlé previously claimed was irrelevant. In Eastman's second and third document requests, dated April 2, and November 29, 2012, Eastman requested documents related to Nestlé's 2009-2010 purchases of CPET resins, including the identity of supplier, the quantities purchased, and the prices paid. Nestlé objected to these requests on May 2 and December 31, 2012. (*See* Beil Decl. Exs. 6 and 7, respectively.)

14

At the discovery conference on February 19, 2012, Magistrate Judge Pitman resolved Nestlé's objections by ordering Nestlé to produce an affidavit setting forth the amount of CPET it purchased from other suppliers for the first nine months of 2009 and all of 2010, and the average price it paid to other suppliers in each of those periods. Nestlé did not break down the information by month or identify the supplier, the price, or how that price was reached. (*See* Beil Decl. Ex. 8.) Further, Nestlé produced no documents to support its summarized allegations. To defend against Nestlé's "new" claim, Eastman would need the detailed CPET purchase data that Nestlé refused to produce. That additional discovery—document production and possibly deposition testimony—will add further expense to Eastman and significantly further delay the resolution of this action.

As Nestlé has offered this Court no explanation for why it could not reasonably comply with the deadline set in the Scheduling Order or any credible explanation for the undue delay in filing its motion for leave to amend except the purported revelation of "new" facts that Nestlé has actually known since at least the summer of 2012, nor has Nestlé shown any regard for the undue prejudice that its actions would cause Eastman and the Court, Nestlé's motion for leave to amend its answer and counterclaims should be denied.

## CONCLUSION

For the foregoing reasons, Eastman respectfully requests that this Court deny Nestlé's motion for leave to amend its answer and counterclaims and grant Eastman such further relief as this Court deems necessary and proper under the circumstances.

Dated: New York, NY
       December 11, 2013

Respectfully submitted,

Marshall Beil
S. Amy Spencer
Kristina M. Allen
McGUIREWOODS LLP
1345 Avenue of the Americas, 7th Floor
New York, NY 10105
(212) 548-2100
*Attorneys for Plaintiff,*
*Eastman Chemical Company*

16