UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

EASTMAN CHEMICAL CO.,

                                  Plaintiff,

                            v.

NESTLÉ WATERS MANAGEMENT &
TECHNOLOGY,

                              Defendant.

------------------------------------------------------X

11 Civ. 2589 (KPF)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __April 1, 2014__

KATHERINE POLK FAILLA, District Judge:

Defendant Nestlé Waters Management & Technology objects to Magistrate Judge Henry Pitman's Order dated January 21, 2014, denying Nestlé's motion to amend its Answer and Counterclaims. Judge Pitman did not clearly err in denying Nestlé's motion and so his Order is affirmed.

## BACKGROUND[1]

### A.    Factual Background

The lengthy history of the relationship and dispute between the parties is only partially relevant to this motion and so the Court will not set it out in full here. In short, Nestlé contracted with Plaintiff Eastman Chemical Company from 2007 through 2009, and again from 2010 through 2013, to supply certain

---

[1]    The facts are drawn from Eastman's Amended Complaint ("Am. Compl."), Nestlé's Answer and Counterclaims ("Def. Answer" and "Def. Counterclaims"), the transcript of the January 17, 2014 conference before Judge Pitman ("1/17/14 Tr."), and the transcript of the December 18, 2013 conference before this Court ("12/18/13 Tr."). Nestlé's objections to Judge Pitman's Order are referred to as "Def. Obj." and Eastman's response to those objections as "Pl. Resp."

resin products to Nestlé and its affiliated entities for manufacturing purposes. (Am. Compl. ¶ 6).  Eastman maintains in this litigation that Nestlé breached its contract with Eastman through certain alleged deceptive and abusive negotiating practices.  (*Id.* at ¶¶ 28-41).  Nestlé disclaims any such liability (Def. Answer ¶¶ 28-41), and counterclaims fraud and fraudulent inducement against Eastman regarding its representations during negotiation of the contracts and fulfillment of its contractual obligations (Def. Counterclaims ¶¶ 20-40).

The Court[2] entered an Order of Reference to a Magistrate Judge on September 9, 2011, referring this case to Magistrate Judge Henry Pitman for general pretrial purposes (including non-dispositive pretrial motions), as well as for a report and recommendation on any dispositive motion.  (Dkt. #19).

## B.    The Instant Dispute

On December 23, 2013, Nestlé moved to amend its Answer and Counterclaims by adding a third counterclaim against Eastman for breach of contract.  (Dkt. #90-92).  As Judge Pitman put it in his oral order denying Nestlé's motion, "[t]he claim here is basically the claim of an aggrieved buyer for cover damages, that is[,] the difference between the contract price and the … price the aggrieved buyer paid or the allegedly aggrieved buyer paid for

---

[2]    This action was at that time before the Honorable Victor Marrero, United States District Judge for the Southern District of New York.  It was transferred to the Honorable J. Paul Oetken, United States District Judge for the Southern District of New York, on October 4, 2011 (Dkt. #21), and then to the undersigned on June 19, 2013 (Dkt. #61).

conforming goods to substitute for the nonconforming goods that the seller offered." (1/17/14 Tr. 51:25-52:5).

Eastman opposed (Dkt. #95-96, 98) and Nestlé filed a reply in further support of its motion (Dkt. #93-94). The parties appeared for oral argument before Judge Pitman on January 17, 2014, where Judge Pitman denied Nestlé's motion to amend, based on both Rule 15 and Rule 16 of the Federal Rules of Civil Procedure, from the bench in an oral Order. (Dkt. #101). He memorialized this decision in a written Order four days later. (Dkt. #100). Nestlé filed objections to that Order on February 4, 2014 (Dkt. #106), and Eastman responded to those objections on February 14, 2014 (Dkt. #108).

## DISCUSSION

### A.   Applicable Law

#### 1.   The Standard of Review

The Second Circuit has suggested, though it has not explicitly held, that a motion to amend is a nondispositive motion and thus district courts must subject the orders of magistrate judges respecting such motions to clear error review. *Fielding* v. *Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007);[3] *see Bridgeport Music, Inc.* v. *Universal Music Grp., Inc.*, 248 F.R.D. 408, 410 (S.D.N.Y. 2008) ("[T]he weight of opinion appears to favor treating … rulings [denying motions to amend the pleadings] as nondispositive."); *see also Sokol Holdings, Inc.* v.

---

[3]   An unpublished Second Circuit decision also explicitly treated motions to amend as nondispositive and analyzed a magistrate judge's denial of such a motion under that standard. *Kilcullen* v. *New York State Dep't of Transp.*, 55 F. App'x 583, 585 (2d Cir. 2003) (summary order).

*BMB Munai, Inc.*, No. 05 Civ. 3749 (KMW) (DCF), 2009 WL 3467756, at *4 (S.D.N.Y. Oct. 28, 2009) (collecting cases); *but cf. Wilson* v. *City of New York*, No. 06 Civ. 229 (ARR) (VVP), 2008 WL 1909212, at *3 (E.D.N.Y. Apr. 30, 2008) ("Courts in this Circuit are divided on the issue of whether, and under what circumstances, motions to amend a pleading are dispositive or nondispositive."). Some courts in this Circuit have concluded that it is appropriate to treat a motion to amend as dispositive when the magistrate judge decided it based on "a substantive evaluation of the proposed claims," *Sokol Holdings*, 2009 WL 3467756, at *4 n.2 (collecting cases), such as on the basis of the futility of the proposed amendment, *Dais* v. *Lane Bryant, Inc.*, No. 97 Civ. 2011 (PKL) (RLE), 2000 WL 145755, at *1 (S.D.N.Y. Feb. 8, 2000), while other grounds for denying a motion to dismiss should receive "clearly erroneous" review, *Wilson*, 2008 WL 1909212, at *4.

In light of the Second Circuit's strong indications and the weight of authority from courts within the Circuit, the Court concludes that motions to amend should generally be reviewed as nondispositive. This standard of review is especially justified where, as here, denial of leave to amend was based on procedural issues like failure to comply with a scheduling order and prejudicial delay. *See Sokol Holdings*, 2009 WL 3467756, at *4 ("Here, the Magistrate Judge's denial of leave to amend is based on a procedural violation — to wit, non-compliance with a scheduling order without a showing of 'good cause' — rather than a substantive determination on the merit of Plaintiffs' claims. The specific circumstances of the instant motion and the weight of opinion in this

4

Circuit suggest that application of the 'clearly erroneous' standard of review is appropriate."). Accordingly, the Court will review Judge Pitman's ruling here for clear error.

### 2.   Motions to Amend

Rule 16(b) of the Federal Rules of Civil Procedure requires a court to issue a scheduling order to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(1), (b)(3)(A). Once a schedule is imposed under Rule 16, it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "A finding of good cause depends on the diligence of the moving party." *Grochowski* v. *Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003). Courts considering motions to amend "also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [the non-moving party]." *Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). Rule 16(b) is designed, at least in part, "to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir. 2000) (internal quotation marks omitted).

In the absence of a valid scheduling order, the parties are subject to the more "lenient standard of Rule 15(a)," *Grochowski*, 318 F.3d at 86, which provides that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "When determining whether to grant leave

to amend, district courts consider: (i) whether the party seeking the amendment has unduly delayed; (ii) whether that party is acting in good faith; (iii) whether the opposing party will be prejudiced; and (iv) whether the amendment will be futile." *Baez* v. *Delta Airlines, Inc.*, No. 12 Civ. 3672 (KPF), 2013 WL 5272935, at *4 (S.D.N.Y. Sept. 18, 2013) (citing *Foman* v. *Davis*, 371 U.S. 178, 182 (1962)).

## B.   Analysis

Judge Pitman denied Nestlé's motion to amend under both Rules 16 and 15 of the Federal Rules of Civil Procedure.[4]  Nestlé contests those rulings on the grounds that Rule 16 should not have been implicated, and, even if so, good cause existed for Nestlé's delay; and that Nestlé's delay in moving to amend created no prejudice to Eastman.  Judge Pitman did not commit clear error with respect to any of these issues.  Accordingly, the Order denying Nestlé's motion to amend is affirmed.

### 1.   Judge Pitman Did Not Commit Clear Error by Denying Nestlé's Motion Under Rule 16

#### a.   A Scheduling Order Existed

At the outset, Nestlé questions whether a valid scheduling order was indeed in place governing the time to move to amend the pleadings.  (Def. Obj. 6 ("[T]here was some uncertainty on the part of both parties as to whether

---

[4]    Eastman also argued to Judge Pitman that Nestlé's motion should be denied on the basis of futility.  Judge Pitman ruled that Eastman had not "shown that the proposed amendment would be futile." (1/17/14 Tr. 55:5).  Eastman's submission to the Court withdraws its futility objection to Nestlé's proposed amendment, without prejudice to asserting it later in this action.  (Pl. Resp. 16).  The Court will not consider Eastman's waived futility argument here.

the Scheduling Order was in fact applicable.")).  Nestlé presents a long and complex narrative of private scheduling discussions between the parties, multiple revised scheduling orders submitted over a period of months with proposed new dates, and actual scheduling orders signed after the expiration of their relevant dates.  (*Id.* at 6-8).  This narrative, Nestlé contends, demonstrates that there was "well-founded" "uncertainty on the part of both parties as to whether the Scheduling Order was in fact applicable."  (*Id.* at 6).

Judge Pitman held otherwise.  He ruled that "the deadline for making motions to amend" had come and gone "two-and-a-half months" before Nestlé made the motion to amend at issue here — in other words, the deadline was September 11, 2013, exactly when the last-signed scheduling order provided.  (1/17/14 Tr. 52:20-21; Dkt #65).  Any other result, Judge Pitman concluded, would require accepting that "the parties by their conduct could somehow alter the deadline for motions to amend" without seeking the presiding judge's permission.  (1/17/14 Tr. 52:22-23).

Nestlé contends that Judge Pitman "misunderstood Nestlé's argument with regard to Rule 16, rejecting an argument that Nestlé did not actually advance." (Def. Obj. 1).  Nestlé never claimed that the parties' conduct could alter a valid scheduling order; its position, to the contrary, was merely that the parties were uncertain whether a valid scheduling order was in place.  (*Id.* at 5-9).  Judge Pitman's mistake, Nestlé insists, is illustrated by his reliance on *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000).  Nestlé argues that *Parker* supports its position and undermines the result Judge Pitman

7

reached.  (Def. Obj. 9).  *Parker* instructs that "limiting the time for amendments … is designed to offer a measure of certainty in pretrial proceedings."  *Id.* at 340.  In Nestlé's view, because the parties were mutually uncertain about whether, and to what effect, a scheduling order bound their freedom to amend, there was no valid interest in defending an arbitrary deadline that had not provided certainty to either party about when the pleadings would be fixed.  (Def. Obj. 9).

Nestlé's argument misses the mark.  Irrespective of what Nestlé may argue it believed, misunderstood, mutually planned with Eastman, asked Judge Pitman to do or not to do, said to Judge Pitman's law clerk, or wrote in a letter to the Court, the fact remains that Judge Pitman signed a Third Amended Case Management Plan and Scheduling Order on August 12, 2013 (the "August 12 Order"; Dkt. #65), which provided that "[a]ny motion to amend or to join additional parties to the pleadings shall be filed within 30 days from the date of" that Order.  Judge Pitman expressly found that that Order governed the progress of this action, and, by extension, that motions to amend were due not later than September 11, 2013.  (1/17/14 Tr. 51:18-19).  The Court cannot say that he was clearly wrong to do so.  Absent any order or endorsement from Judge Pitman providing or suggesting that the relevant deadline had moved, Nestlé simply has no basis to assert that the deadline for amendments even arguably was anything other than September 11, 2013.

Nestlé argued before Judge Pitman that the August 12 Order "had been superseded through subsequent appearances in this courtroom."  (1/17/14

Tr. 15:21-22).  But as Judge Pitman pointed out immediately afterward, *no* discussions regarding proposed alterations to the August 12 Order ever addressed the deadline to amend the pleadings.  (*Id.* at 15:23-16:3).  Though Nestlé's counsel resolutely responded that the deadline for motions to amend "was always carried forward" in previous revised scheduling orders, the fact remains that no such order was ever signed.

Finally, Nestlé submits that because Eastman "took advantage of the uncertainty and confusion to file its submissions on a schedule inconsistent with the [August 12 Order], it should be estopped from nevertheless arguing that Nestlé may not do the same."  (Def. Obj. 9).  This argument fails as well.  First, the Second Circuit has explained that a district court "must exercise its discretion under Rule 16(b) to determine whether … to allow an amended [pleading,]" and should evaluate, among other things, whether granting such a motion would prejudice the non-moving party.  *Kassner*, 496 F.3d at 244.  Whether Eastman's conduct of discovery in this action was correct has no bearing on the Court's obligation to assess whether granting Nestlé's motion to amend would comport with the requirements of the Federal Rules.  Second, as Judge Pitman found — and was not clearly wrong to do so — the issue of Eastman's expert reports and depositions submitted after the deadline in the August 12 Order is not "properly wrapped up in the motion to amend." (1/17/14 Tr. 17:1-2).  Nestlé relies heavily on the "compelling" strength and "fundamental fairness" of its argument that Nestlé and Eastman should be held to the same standard.  (Def. Obj. 2, 8-9).  But Judge Pitman concluded

9

that this argument was irrelevant to Nestlé's motion to amend. (*See* 1/17/14 Tr. 16:21-23 ("So if you wanted to make some supplemental motion depending upon how your motion to amend comes out you're free to do so....")). This was not clear error.[5]

### b.   Nestlé's Motion Fails Under Rule 16

Nestlé cannot unseat Judge Pitman's determination that a valid scheduling order existed. In consequence, Nestlé's motion to amend was properly evaluated under "the more exacting Rule 16 standard." *Castro-Sanchez* v. *N.Y.S. Dep't of Corr. Servs.*, No. 10 Civ. 8314 (DLC), 2012 WL 4474154, at *1 n.1 (S.D.N.Y. Sept. 28, 2012). Rule 16(b)'s "good cause" standard requires the court to inquire into the "diligence of the moving party" *Grochowski*, 318 F.3d at 86, in addition to considering "other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [the non-moving party]," *Kassner*, 496 F.3d at 244.

---

[5]     Nor, it bears noting, does it necessarily follow that such a motion to strike Eastman's expert submissions would be successful. It is at least possible that Eastman could argue that the parties' conversations with Judge Pitman regarding adjournments to the deadlines for fact and expert discovery provided a reasonable basis to believe that those deadlines had been extended. But Nestlé acknowledged to Judge Pitman that no such discussion took place regarding the deadline to amend the pleadings. (*See, e.g.*, 1/17/14 Tr. 7:5-15 ("The Court: Well was there any subsequent amendment of the ... date to amend the pleading.... [Counsel for Nestlé]: No. But ... if we had submitted a proposed order ... I think we can presume it would have extended those dates....")). Nestlé treats these issues as logical correlatives when in fact the success or failure of a potential subsequent motion by Nestlé to strike Eastman's expert testimony is a separate question.

Judge Pitman found that Nestlé could not demonstrate good cause and that the delay in moving to amend prejudiced Eastman. The Court affirms both findings.

### i. No Good Cause Was Shown

Counsel for Nestlé admitted to Judge Pitman at oral argument on the present motion that the information providing the basis for the counterclaim it seeks to add was "within [Nestlé's] files" even before this action was filed. (1/17/14 Tr. 3:16-23). Nestlé noted that it had actually informed Judge Pitman during conferences on September 9 and September 11 that it "might amend" its counterclaims. (*Id.* at 9:25-10:6). When asked why it waited 10 weeks after those representations — and the expiration of the deadline for motions to amend — before it actually sought to make the contemplated amendment, Nestlé explained that it had been "engaged in responding to [Judge Pitman's] directives," apparently in the belief that complying with discovery orders could provide good cause for a 10-week delay. (*Id.* at 11:8-12:5, 12:16-13:6).

On the basis of these representations and the record of the case, Judge Pitman found that all the information necessary to perceive the counterclaim at issue was "in Nestlé's possession from before the inception of the case," and that "there really hasn't been a good explanation proffer[ed], a good cause shown for the delay in the motion." (1/17/14 Tr. 52:6-7, 17-18; *see also id.* at 53:6-9 ("This was not new information. The counterclaim is not based on new information produced in discovery. It's based on information that [Nestlé]

either had in its possession or was always accessible….")).  These findings were not clearly erroneous.

Nestlé unsurprisingly contends to the contrary, citing to the Court's decision in *Affiliated FM*, which held that, in the narrow factual circumstance present there, "'[i]t would contravene the purpose of the Federal Rules [and] … be unjust … to deny amendment because of … counsel's delayed recognition'" of the defense at issue.  (Def. Obj. 11 (quoting *Affiliated FM Ins. Co.* v. *Liberty Mechanical Contractors, Inc.*, No. 12 Civ. 5160 (KPF), 2013 WL 4526246, at *6 (S.D.N.Y. Aug. 27, 2013))).  The facts here are markedly different.  Nestlé's recognition of its would-be counterclaim was not "delayed"; Nestlé avowedly intended to amend before the deadline, and by way of excuse for failing to do so offered only that it was busy doing other things.[6]  Good cause requires more.  *See Rent-A-Ctr., Inc.* v. *47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003) (holding that the good cause standard requires that a "movant must show that the deadlines cannot be reasonably met despite its diligence").

### ii.    There Was Prejudice

Briefing its opposition to Nestlé's motion to dismiss before Judge Pitman, Eastman noted that "[t]o defend against Nestlé's 'new' claim, Eastman would need the detailed [substitute good] purchase data that Nestlé refused to

---

[6]    Nestlé also noted in this context "a certain degree of uncertainty" regarding the deadline for motions to amend, and represented that "had [Nestlé] believed that the amendment was due to be done by September 11," this motion would have been made earlier. (1/17/14 Tr. 13:3-8).  But a claim that a party would have complied with a deadline is not enough to make up for failing to do so.  And the Court has already determined that Judge Pitman was not clearly incorrect to conclude that the August 12 Order was the governing scheduling order for this purpose.

produce" earlier in discovery on the grounds that it was not, then, relevant to any claim at issue in the action.  (Dkt. #96 at 15; *see also id.* at 14 ("Adding Nestlé's proposed new claim will delay [this action] … because it will require additional fact discovery, and possibly depositions" regarding "Nestlé's 2009-2010 purchases of [substitute] resins, including the identity of the supplier, the quantities purchased, and the prices paid"), 3 ("Nestlé prevented Eastman from getting discovery on Nestlé's purchases of [substitute goods] from another supplier in 2010, but Eastman will need the denied discovery — documents, and possibly testimony — on that subject to prepare a defense to Nestlé's proposed new counterclaim.").  At oral argument, Eastman again indicated its belief that the proposed amendment would require additional discovery, especially because the only information Nestlé had previously produced regarding its orders of the alleged substitute goods was "a summary document without any of the underlying data."  (1/17/14 Tr. 38:20-21; *see also* Pl. Resp. 10-11 ("[T]he information Nestlé never produced … represents a large part of the discovery from Nestlé and third parties Eastman will need to obtain if Nestlé's proposed amendment is permitted.")).  Indeed, counsel for Nestlé told Judge Pitman that he could not recall what backup data existed for the summary chart Nestlé had produced or what form that backup data might take.  (1/17/14 Tr. 45:5-46:7).

    For example, Eastman argued it would be compelled to obtain paper discovery from a third party, APT, that had actually ordered the materials Nestlé claims it was compelled to purchase in substitution for Eastman's

allegedly nonconforming goods; this discovery would be necessary, Eastman explained, to determine how Nestlé's purported substitute orders would have been priced, based on the exact dates on which Nestlé purchased and paid for specific quantities.  (1/17/14 Tr. 29:25-30:11; *see also* Pl. Resp. 10-11).  Eastman also explained that it might have to obtain paper discovery from another third party, Invista, the alternative supplier of the substitute goods, as well as possible depositions regarding order discussions and quantities.  (1/17/14 Tr. 30:10-17; *see also* Pl. Resp. 11).  All this discovery would be necessary, Eastman argued, because of the need to confirm whether "what the aggrieved party did" in response to alleged contractual nonperformance "was reasonable" with respect to establishing damages.  (1/17/14 Tr. 39:15-16 (answering Judge Pitman's question regarding why discovery would be necessary given the Uniform Commercial Code's provision that aggrieved sellers may obtain "the difference between the cost [of] covering and the contract price")).

Based on these representations, Judge Pitman concluded that Nestlé's delay had prejudiced Eastman because Eastman, should Nestlé be permitted to amend, "would be entitled to take discovery as to the commercial reasonableness of" Nestlé's alleged substitute purchases.  (1/17/14 Tr. 53:24-25; *see also id.* at 54:1-23).  This determination was not clearly wrong.

Nestlé objects to Judge Pitman's conclusion on several grounds.  The first and most perplexing is its contention that that Judge Pitman "found prejudice based on an argument that [Eastman] never even raised."  (Def.

Obj. 13; *see also id.* at 15 ("Relying on a Basis for Prejudice Which [Eastman] Did Not Identify Was Unfair and Created an Inconsistency Between Rulings."), 17 ("[A]ny allegation of prejudice not relied upon by [Eastman] should not have been relied upon by the Court.")). Nestlé goes so far as to suggest that Judge Pitman "potentially compromis[ed] [his] neutrality," or intruded on Eastman's "litigation strategy," by raising a form of prejudice Eastman failed to identify. (*Id.* at 15).

Nestlé's argument cannot prevail. Eastman, throughout its argument to Judge Pitman, focused on the prejudice of being compelled to conduct substantial new discovery at this late point in the proceeding to identify Nestlé's ordering and purchasing patterns, payment contracts, and associated price data. (1/17/14 Tr. 29:24-31:12, 35:10-39:1). Eastman specifically explained that this discovery was necessary, among other things, to determine whether Nestlé's approach to covering its alleged losses "was reasonable." (*Id.* at 39:12-16). And Judge Pitman certainly did not clearly err in relying on that explicit position in ruling against Nestlé. (*Id.* at 51:25-52:21). This argument, apparently the heart of Nestlé's objections to Judge Pitman's Rule 16 ruling, badly misreads the record.

Nestlé tries to recharacterize Eastman's explicit reliance on this theory of prejudice in two equally unsuccessful ways. First, Nestlé waves away the fact that Eastman explicitly identified a need to determine whether Nestlé's efforts to obtain substitute goods "was reasonable" (1/17/14 Tr. 39:15-16); this reference, Nestlé submits, related to "the reasonableness of Nestlé's actions

15

rather than the reasonableness of the cover price" (Def. Obj. 13 n.8).  Nestlé offers no further explanation of what "actions" Eastman could possibly have been identifying other than Nestlé's efforts to obtain substitute products, nor how these "actions" could have been reasonable or unreasonable except with respect to the price Nestlé paid for such goods.  Nestlé's argument is all the more unavailing when considered in context.  Eastman's reference to reasonableness arose in response to Judge Pitman's question about Nestlé's cost of cover and came immediately after Eastman specifically referred to its need for discovery on Nestlé's "ordering patterns … to determine pricing." (1/17/14 Tr. 38:24-25).  Eastman very clearly relied, both in its submission to and its argument before Judge Pitman, on the need to conduct discovery to determine the reasonableness of Nestlé's cost to cover, and Nestlé cannot demonstrate otherwise.

Nestlé also argues that Judge Pitman invented the basis for finding prejudice himself because it was he, not Eastman, who cited the relevant provision of the Uniform Commercial Code.  (Def. Obj. 13 n.8).  But by grasping at this narrow, technical straw, Nestlé implicitly acknowledges what it cannot credibly contest: Eastman did identify discovery regarding Nestlé's cost of cover as a form of prejudice Nestlé's proposed amendment would create, whether or not in doing so Eastman cited the proper section of the UCC.  In short, the basis for Judge Pitman's ruling on prejudice was perfectly appropriate.

Next, Nestlé contends that Judge Pitman's ruling is based on a factual misunderstanding: under the August 12 Order, fact discovery had already

16

closed by the deadline to amend, and so further discovery would have been unavailable even had Nestlé made a timely motion.  (Def. Obj. 13).  And, Nestlé points out, though Eastman could of course have moved to extend fact discovery in response to such a timely motion, Eastman could just as easily have done the same when Nestlé ultimately filed its motion to amend on November 26.  (*Id.* at 14).

This argument, while facile, misses the point.  As Judge Pitman put it during oral argument, "most people would say it's different being two days late than being two months late." (1/17/14 Tr. 12:10-11).  The fact is that Nestlé did not seek to introduce this new counterclaim in mid-September; it sought to introduce it in late November.[7]  The Court set a briefing schedule for the parties' anticipated respective motions for summary judgment only three weeks later.  (Dkt. #88).  Had Judge Pitman permitted Nestlé's proposed amendment on January 17, the parties would have had only eight weeks remaining before motions for summary judgment were due.  Nestlé's tardy effort to amend would, if successful, have thrown the briefing schedule into disarray and forced Eastman both to embark upon a substantial new discovery initiative and to

---

[7]     It also bears pointing out that, even had its motion been timely, Nestlé would always have had to contend with Rule 15's prohibition of prejudice to the nonmoving party.  It is by no means a foregone conclusion, had Judge Pitman confronted this motion on September 11, that he would have found no prejudice to Eastman posed by a new counterclaim introduced 13 months after Nestlé's Answer was first filed (Dkt. #51), especially given that the nature of the counterclaim would have required reopening fact discovery late in the game.  But those facts are not confronted here and the Court concludes only that Judge Pitman did not commit clear error in finding prejudice posed by a new counterclaim introduced in November 2013.

develop new factual and legal theories in opposition to the new counterclaim. Judge Pitman was not clearly wrong to find that this constituted prejudice.

Third, Nestlé objects to Judge Pitman's decision because, on several occasions, he posed the question of prejudice by asking whether Eastman would have acted different in February 2013, had Nestlé added its proposed counterclaim at that point. (Def. Obj. 14). These questions, Nestlé contends, prove that Judge Pitman's analysis was flawed: the proper comparison was between what Eastman would have done differently had Nestlé made a timely motion to amend on September 11, 2013, instead of 10 weeks later on November 26.

Here, too, Nestlé seems to misunderstand Judge Pitman's comments at the January 17 oral argument, or at least to miss their explanatory context. Judge Pitman asked, early in the oral argument, "Wouldn't it have impacted the discussion we had last February on … [Eastman's] document request if the third counterclaim had been asserted at that time?" (1/17/14 Tr. 18:6-9). This, as counsel for Nestlé explained moments later and as is clear from the docket, was a reference to the discovery hearing held before Judge Pitman on February 19, 2013. (*Id.* at 18:12-13; Dkt. #54). In that hearing, among other things, Eastman sought to enforce certain document requests regarding the price Nestlé paid for substitute goods to cover Eastman's alleged breach and the quantities of those goods Nestlé purchased. (Dkt. #54 at 66:3-5). This information is, of course, precisely the information now implicated by Nestlé's proposed counterclaim. At that time, however, granular data were irrelevant to

18

the counterclaims then at issue in the action, and so Eastman only sought high-level information, specifically eschewing "the underlying documents and a lot of detail…." (*Id.* at 76:5-6). Accordingly, Judge Pitman directed Nestlé to produce "an affidavit setting forth the amount of [substitute resin products] i[t] bought in 2009 and 2010 and the average price in each year." (*Id.* at 77:7-9). This summary affidavit was necessary because Nestlé's allegations made "some price information relevant." (*Id.* at 77:10). Data at that high level of generality, it is now clear, will not aid Eastman in substantiating an argument about the reasonableness of cover prices paid in specific months for specific orders. (1/17/14 Tr. 40:6-12).

In other words, Judge Pitman's first mention of February during the oral argument was a reference to a particular occasion on which he denied certain of Eastman's document requests for specific documentation regarding Nestlé's orders of substitute goods and the prices Nestlé paid. In place of those documents, he required Nestlé instead to submit an affidavit providing compilation ordering data and average pricing data. (*See* 1/17/14 Tr. 26:18-21 ("The Court: Well, you did get summary information on that score last winter or last spring. That was what we discussed last February and there was an affidavit and summary information produced as I recall.")). But had Nestlé's proposed counterclaim been at issue during that exchange, such compilation and average data would obviously have been insufficient. (*See id.* at 26:25-27:2 ("[T]hat's certainly not enough discovery to deal with a claim now [regarding] the cost of cover of stuff they never ordered.")). Nestlé would have

had to produce different documents (*id.* at 35:10-12), and Eastman would have conducted subsequent discovery differently; this included the questions asked at the deposition of one Bouzekri, a Nestlé deponent (*id.* at 31:4-5) who was, counsel for Eastman alleged, involved in "virtually every email dealing with monthly pricing" (Dkt. #54 at 79:7), and who would, Eastman represented to Judge Pitman, have been the subject of questioning on the issue of Nestlé's proposed counterclaim for breach of contract (1/17/14 Tr. 30:14-19, 35:12-18, 35:23-36:3).

When Judge Pitman referred to February again in the oral argument, he was asking how Eastman would have framed its discovery requests and conducted subsequent discovery differently had that February hearing been held in the context of a third asserted counterclaim regarding the cost of coverage.  (*See* 1/17/14 Tr. 29:21-30:19).  And Nestlé's answers, contrary to its objections here, make clear that Nestlé understood those questions in just that way.  (*See id.* at 18:6-13 ("The Court: Wouldn't it have impacted the discussion we had last February on [Eastman's] document request if the third counterclaim had been asserted at that time? … [Counsel for Nestlé]: I've spent time over this week reviewing the transcript from February 19th, Your Honor….")).  Judge Pitman did not choose an incorrect date from which to reckon his analysis of the prejudice posed by Nestlé's motion to amend.  He was illustrating the specific form of that prejudice by citing one major discovery ruling that would have come out the other way had Nestlé amended earlier. Nor would it necessarily have been clear error had Judge Pitman assessed

prejudice to Eastman with respect to a specific unit of time different from that Nestlé submits is appropriate.  No matter when Nestlé moved or what date provided the beginning of the window within which prejudice might inure to Eastman, Nestlé would always have had to show that the timing of the amendment did not prejudice Eastman.  Judge Pitman found prejudice here and was not wrong to do so.

Fourth, Nestlé submits that it has already produced "precisely the pricing data which relates to its proposed third counterclaim," such that any "prejudice had in fact been ameliorated by the time Nestlé in fact moved to amend in November."  (Def. Obj. 14).  This argument is a nonstarter.  As discussed at length above, Judge Pitman correctly concluded that Eastman would have to conduct substantial additional discovery if Nestlé's proposed counterclaim were approved.

Fifth, Nestlé argues that any potential prejudice could, and should, properly have been ameliorated simply by giving Eastman time to conduct the necessary discovery.  (Def. Obj. 15-18).  Nestlé cites *State Teachers Ret. Bd.* v. *Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981), as authority for this proposition, quoting the Second Circuit's observation that a nonmovant is not prejudiced by a delayed motion to amend the pleadings when the "amended claim was obviously one of the objects of discovery and related closely to the original claim." *Id.*  The facts here are dispositively different.  Nestlé's proposed counterclaim was exactly not one of the objects of discovery.  In fact, as discussed above, at the February 19 discovery hearing Judge Pitman

21

specifically foreclosed much of the discovery Eastman would need to take regarding Nestlé's proposed counterclaim because, at that time, the information in question was not relevant to any claim at issue. Nor is it true here, as it was in *State Teachers*, that "the amendment will not involve a great deal of additional discovery." *Id.* at 856. On the contrary, Judge Pitman found that substantial additional discovery would be required if Nestlé's proposed counterclaim were approved. As the Court has explained at length throughout this Opinion, Judge Pitman was not clearly wrong to do so. *State Teachers*, if anything, illustrates exactly why the prejudice posed by this proposed counterclaim had no simple solution: unlike in *State Teachers*, permitting Nestlé's proposed counterclaim would have required a significant amount of paper discovery, potential new depositions or the reopening of old depositions, and appreciable delay in pursuing even partial resolution of this action.

In a last-ditch effort, Nestlé argues that forbidding its proposed counterclaim is inconsistent with the Court's solution to the problem posed by Eastman's production on December 17, 2013, of a supplemental expert report disclosing previously unproduced data. (Def. Obj. 15-17). There, though the new data certainly should have been produced much earlier, Eastman represented that the data in question had only been obtained and assessed by their expert in the recent past, and were produced as soon as was practicable. (Dkt. #110 at 4:1-8:17). The Court decided that the best approach to this new data and associated analysis was to permit Nestlé time to digest the report, obtain further deposition testimony from Eastman's expert, and, if necessary,

22

amend its own expert report in response.  (*Id.* at 22:23-23:1).  From this, Nestlé now argues that the only appropriate solution to the prejudice to Eastman produced by Nestlé's proposed counterclaim is to permit amendment and grant Eastman time to conduct the requisite discovery.  (Def. Obj. 15-16).

Nestlé's final argument is no more successful than any other because it treats two meaningfully different forms of prejudice as commensurate.  (*See* Pl. Resp. 15 n.5).  The problem Eastman generated by its late data production and supplemental expert report of December 2013 was not insignificant: Nestlé needed more time to consider the new data and obtain additional deposition testimony from Eastman's expert.  The prejudiced posed by Nestlé's amendment was far more extensive.  As Judge Pitman found, the proposed counterclaim would require that Eastman take "substantial additional discovery" (1/17/14 Tr. 54:16-17) involving multiple third parties, new depositions, and the reopening of earlier depositions.  Moreover, as Judge Pitman put it, Eastman is at this point in the litigation "really unable to take the discovery" necessary to mount an adequate defense against the proposed counterclaim.  (*Id.* at 54:22-23).

The much more limited prejudice to Nestlé created by Eastman's late expert report was easily solved by a short expansion of the time provided to the parties to prepare their motions for summary judgment.  (12/18/13 Tr. 24:11-19).  Here, though, it is not possible to reopen fact discovery as extensively as would be required to avoid prejudice to Eastman from Nestlé's new counterclaim.  The summary judgment briefing schedule would have to be

cancelled, presumably to begin again at some point in the future.  The parties

would be forced to identify documents and their custodians in two countries.

The parties would have to return before Judge Pitman for more disputes over

properly discoverable documents. And the delays in resolving this litigation

would simply concatenate.

The Court cannot find clear error in Judge Pitman's conclusions that

Nestlé's amendment, if permitted, would work irremediable prejudice to

Eastman's ability to defend itself at trial.  (1/17/14 Tr. 54:21-23).  Accordingly,

Judge Pitman was correct to deny Nestlé's motion to amend under Rule 16.

*See Kassner*, 496 F.3d at 244 (noting that courts should examine the prospect

of prejudice from a proposed amendment as part of Rule 16 analysis).

### 2.   Judge Pitman's Ruling Under Rule 15 Was Also Not Clearly Erroneous

As extensively discussed above, Judge Pitman did not clearly err in

ruling that Eastman would be prejudiced were Nestlé's new counterclaim

permitted.  For the same reason, Nestlé's amendment was also appropriately

denied under Rule 15.  (1/17/14 Tr. 54:24-55:3).  *See Block* v. *First Blood*

*Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to

allow a party to amend its pleadings in the absence of a showing by the

nonmovant of prejudice or bad faith."); *see generally AEP Energy Serv. Gas*

*Holding Co.* v. *Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (identifying

prejudice to the opposing party resulting from a proposed amendment as

among the "most important" reasons to deny leave to amend (internal

quotation marks omitted)).

## CONCLUSION

For the reasons set forth above, Nestlé's objections are denied and Judge

Pitman's Order denying Nestlé's motion to amend is affirmed.

SO ORDERED.

Dated:      April 1, 2014
            New York, New York

_____
       KATHERINE POLK FAILLA
       United States District Judge

25